Anibal MONTANEZ a/k/a Ivan Montilla–Pena, Appellant

v.

The STATE of Texas.

No. PD–894–04.

Court of Criminal Appeals of Texas.

April 26, 2006.

David M. Cook, Lufkin, for appellant.

Jeffrey L. Van Horn, First Assistant State's Attorney, Matthew Paul, State's Attorney, Austin, for State.

### *OPINION*

KEASLER, J., delivered the opinion of the Court in which PRICE, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

Anibal Montanez filed a motion to suppress claiming that his consent for the search of the vehicle, which yielded cocaine, was not voluntary. The trial court denied the motion. Reversing the trial court, the court of appeals held that the record does not contain clear and convincing evidence to support the trial court's finding.[1] We find that the court of appeals correctly determined that the issue was preserved for review, but erred in failing to apply the standard of review provided in *Guzman v. State.*[2]

### Facts and Procedural History

Montanez is a native of Puerto Rico. With the assistance of an interpreter, he pled guilty to possessing 400 grams or more of cocaine and was sentenced to

---

1. *Montanez v. State,* 143 S.W.3d 344, 346 (Tex.App.-Waco 2004).

2. 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

twenty years' imprisonment, in accordance with his plea agreement with the State. Before entering his plea, however, Montanez filed a motion to suppress, asserting that the search of the vehicle he was driving was conducted in violation of the Texas and United States Constitutions. He argued that he had been illegally detained and that the search was unsupported by probable cause or voluntary consent.

At the suppression hearing, Investigator Bridges, a member of the Deep East Texas Regional Narcotics Trafficking Task Force, testified that he stopped the vehicle Montanez was driving for traffic violations. He "felt like some type of illegal activity was occurring" based on his conversations with Montanez and his passenger, so he asked for Montanez's consent to search the vehicle.

On cross-examination, Bridges acknowledged that Montanez did not speak English very well and that he had to repeat some questions, including his request for consent. But he stated that Montanez answered his questions and they had "communicated quite well." Bridges testified that after his second request for consent, Montanez acquiesced by motioning toward the back of the vehicle and stating, "You want to check it out, you can check it out."

While Bridges was conducting a search of the vehicle, another officer, a K–9 handler, arrived at the scene with a dog certified to detect the presence of narcotics. The handler testified that the dog gave a positive alert at the rear of the vehicle. Bridges testified that he told Montanez and his passenger that they were under arrest and then directed them to follow him to the task force headquarters in their vehicle. At the task force headquarters, the gas tank was removed from the vehicle, revealing seven kilos of cocaine.

During the suppression hearing, a videotape from Bridge's patrol car showing the traffic stop was offered by the State and admitted into evidence without objection from Montanez. Part of the video was shown, and an interpreter translated the recorded speech from English to Spanish for Montanez. At the end of the hearing, the trial judge stated that he would review the entire video and allow time for additional briefing before rendering a decision. The hearing concluded, and the trial judge stated that he anticipated making a ruling the following day. The record, however, does not contain an order from the trial judge denying Montanez's motion to suppress.

Montanez appealed the trial judge's decision to deny his motion to suppress, alleging, among other things, that the judge erred in ruling that Montanez's consent was voluntary because he did not "speak and understand enough English to even be able to give informed consent[.]" The State argued that the court of appeals should dismiss Montanez's appeal for lack of jurisdiction because Montanez's notice of appeal did not comply with Texas Rule of Appellate Procedure 25.2(b) and because the trial court never ruled on his motion to suppress.

Addressing the State's arguments, the court of appeals found that Montanez filed an amended notice of appeal under Rule 25.2(b), curing any error with the first notice of appeal.[3] Further, citing Texas Rule of Appellate Procedure 33.1(a)(2)(A), the court stated that even though the record did not contain an order denying the motion to suppress, "We will imply an adverse ruling in light of the events that

---

**3.** *Montanez,* 143 S.W.3d at 345 n. 1; *see Bayless v. State,* 91 S.W.3d 801, 806 (Tex.Crim. App.2002).

took place after the hearing, including a certification by the court of Appellant's right to appeal based on a pre-trial ruling." [4]

The court went on to address whether the trial court erred in finding that the State proved by clear and convincing evidence that Montanez's consent to search was voluntary.[5] The court stated it "reviewed the totality of the circumstances in light of the State's burden of proof on the issue of consent" and then held, "Giving proper deference to the trial court's determination, we nevertheless conclude that the record of the suppression hearing does not contain clear and convincing evidence to support the trial court's finding that Appellant freely and voluntarily consented to the search." [6] The court reversed the judgment of the trial court and remanded the case to trial court for further proceedings.[7]

We granted the State's petition for discretionary review, which asks us to consider whether the court of appeals erred "in its review of the trial court's denial of the appellant's motion to suppress by applying a legal-sufficiency standard of review, instead of applying the standard of review mandated by this Court in *Guzman* . . . [.]" But before we address this issue, we will, on our own initiative, re-examine whether the court of appeals correctly decided that the record supports that an implied adverse ruling on Montanez's motion to sup-

press was made by the trial court.[8] Whether the record reflects that the trial judge implicitly overruled Montanez's motion to suppress is a threshold issue that the State briefed and Montanez had an opportunity to brief[9] in the court of appeals.

### Preservation of Error

■ In order to raise a complaint on appeal, Rule 33.1(a) requires, among other things, that the record show the trial court "ruled on the request, objection, or motion, either expressly or implicitly . . ." [10] When interpreting the predecessor to Rule 33.1(a), Texas Rule of Appellate Procedure 52(a), we stated that "[a] trial court's ruling on a matter need not be expressly stated if its actions or other statements otherwise unquestionably indicate a ruling." [11] The record must sufficiently reflect that the trial court ruled adversely on a motion.[12]

The court of appeals, with Chief Justice Gray dissenting, held that there was an implied adverse ruling based on "the events that took place after the hearing, including a certification by the [trial] court of Appellant's right to appeal based on a pre-trial ruling." [13] In dissent, Chief Justice Gray stated: "if an adverse ruling could be implied merely from the fact of an appeal, then no appellate issue could ever be forfeited by lack of a ruling." [14] He

**4.** *Id.*

**5.** *Id.* at 346.

**6.** *Id.*

**7.** *Id.* at 348.

**8.** Tex.R.App. P. 66.1.

**9.** Tex.R.App. P. 38.3.

**10.** Tex.R.App. P. 33.1(a)(2)(A); *see also Gutierrez v. State*, 36 S.W.3d 509, 510–11 (Tex.Crim. App.2001).

**11.** *Rey v. State*, 897 S.W.2d 333, 336 (Tex. Crim.App.1995).

**12.** *Id.* at 337.

**13.** *Montanez*, 143 S.W.3d at 345 n. 1, 348 (Gray, C.J., dissenting).

**14.** *Id.* at 348 (citing *Gutierrez v. State*, No. 14–96–01017–CR, 2001 WL 783711, at *2–3 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd), 2001 Tex.App. LEXIS 4645, at *6–9 (not designated for publication)).

added, "It would have been trivially simple for Appellant to ask for a ruling, make a bill of exception, object to the trial court's failure to rule, or supplement the record on appeal; but he failed to do so." [15]

We find that the majority of the court of appeals is correct. The record reflects that the trial judge implicitly overruled Montanez's motion to suppress. While the fact that the trial judge ultimately found Montanez guilty is a factor to be considered in determining whether the trial court ruled adversely on his motion to suppress, it is not dispositive. [16] Indeed, a defendant can abandon a motion to suppress before entering a guilty plea.

Next, although we understand Chief Justice Gray's concern, the record here reveals more than just the fact of an appeal by Montanez. At the end of the hearing on Montanez's motion to suppress, the trial judge stated:

> I would assume that I can probably review the tape this afternoon. But I may wait till tomorrow to have it—to have the opportunity to read whatever the State's brief before I—where I can see where both of you are coming from and then view the tape, and I'll rule.

The last line on the trial court's docket sheet states, "appeal preserved as to issues presented[.]" Montanez's amended notice of appeal also states, "This is notice of the defendant's right to appeal to the court of appeals from the judgment or other appealable order in this case." Included on

the document containing Montanez's amended notice is the trial judge's certification of Montanez's right to appeal. The trial judge certified that Montanez's appeal "is in a plea-bargain case, and is on matters that were raised by written motion filed and ruled on before trial."

To require that Montanez have requested a ruling, made a bill of exception, objected to the trial court's failure to rule, or supplemented the record on appeal, in order to have preserved the issue for appellate review, as suggested by the dissent, would directly conflict with the plain language of Rule 33.1(a)(2)(A) that permits an implicit ruling. We find that the actions and statements of the trial judge "unquestionably indicate" that the judge overruled Montanez's motion to suppress. [17]

### Applicable Standard of Review

■ Voluntary consent to search is a well-established exception to the warrant and probable cause requirements of the Fourth Amendment to the United States Constitution. [18] The federal constitution requires the State to prove voluntary consent by a preponderance of the evidence. [19] Under Article I, Section 9 of the Texas Constitution, however, the State must prove by clear and convincing evidence that consent was given voluntarily. [20]

■ Here, the court of appeals held: "Giving proper deference to the trial court's determination, we nevertheless conclude that the record of the suppres-

---

15. *Id.*

16. *But cf. Corpus v. State*, 931 S.W.2d 30, 31 (Tex.App.-Austin, pet. dism'd) (holding that the county court impliedly ruled on the appellant's motion to suppress blood alcohol tests where the court did not hold a pre-trial hearing and it found the appellant guilty of driving while intoxicated).

17. *Rey*, 897 S.W.2d at 336.

18. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex.Crim.App.2000) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Ibarra*, 953 S.W.2d 242, 243 (Tex.Crim.App.1997)).

19. *Id.* (*citing Ibarra*, 953 S.W.2d at 245).

20. *Id.*

sion hearing does not contain clear and convincing evidence to support the trial court's finding that [Montanez] freely and voluntarily consented to the search."[21] Citing our opinion in *Zuniga v. State,* where we stated that the burden of proof at trial—beyond a reasonable doubt—affects the standard of review that applies to a claim of factually insufficient evidence on appeal,[22] the court of appeals stated, "The burden of proof in a trial-court hearing affects the standard by which we review factual determinations on appeal."[23]

Disagreeing with the majority again, this time with the manner in which the appellate court addressed the merits of Montanez's claim, Chief Justice Gray stated that the majority applied the wrong standard of review because the court failed to give " 'almost total deference' " to the trial court's findings.[24] Similarly, in its petition for discretionary review, the State argues that the court of appeals improperly reviewed the alleged error by using sufficiency of the evidence as the standard of review when deciding whether the trial court erred in denying Montanez's motion to suppress. The State maintains that the imposition of such a standard "fails to afford the required deference to the trial court's factfinding decision." The State contends that the court of appeals should have applied the standard of review set forth in *Guzman.*

In *Guzman,* we determined that when reviewing a trial court's decision to deny a motion to suppress, an appellate court "should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor."[25] An appellate court "should afford the same amount of deference to trial court's rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor."[26] Finally, an appellate court may conduct a *de novo* review where the resolution of mixed questions of law and fact do not turn on an evaluation of credibility and demeanor.[27]

Moreover, in *State v. Ross,* we said that where a trial court does not enter any findings of fact when denying a defendant's motion to suppress, an appellate court must view the evidence "in the light most favorable to the trial court's ruling" and "assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record."[28]

We agree with the State and Chief Justice Gray. Our precedent, as demonstrated by the cases discussed below, establishes that when an appellate court is asked to decide whether the State proved voluntary consent to search by clear and convincing evidence, the applicable standard of review is that set out in *Guzman.*

In *Carmouche v. State,* we found that the court of appeals erred when it found that the State proved by clear and convincing evidence that the search of the appel-

---

21. *Montanez,* 143 S.W.3d at 346.

22. 144 S.W.3d 477, 484 (Tex.Crim.App.2004).

23. *Montanez,* 143 S.W.3d at 346 n. 4.

24. *Id.* at 348–49 (citing *Rayford v. State,* 125 S.W.3d 521–28 (Tex.Crim.App.2003); *Guzman,* 955 S.W.2d at 89).

25. 955 S.W.2d at 89.

26. *Id.*

27. *Id.*

28. 32 S.W.3d 853, 855 (Tex.Crim.App.2000).

lant's pants, which revealed cocaine, was supported by free and voluntary consent.[29] We began our analysis by referring to the standard of review that applies to a trial court's determination of historical facts that are supported by the record when the findings are based on an evaluation of the credibility and demeanor as stated in *Guzman*.[30] However, pointing out that the appellant's case presented a unique set of facts, we declined to afford " 'almost total deference' to the trial court's implicit findings...."[31] In doing so, we stated that the trial judge's decision to overrule the appellant's motion to suppress appeared to be based on a finding that the search was supported by probable cause.[32] We also determined that the nature of the evidence presented on the videotape of the stop did not depend " 'on an evaluation of credibility and demeanor.' "[33] We found that the videotape presented "indisputable visual evidence" that contradicted "essential" portions of the officer's testimony and stated, "we cannot blind ourselves to the videotape evidence simply because ... [the testimony of the officer] may, by itself, be read to support the Court of Appeals' holding."[34]

In *Martinez v. State*, the appellant, on direct appeal under Article 37.071, Section 2(h) of the Code of Criminal Procedure, challenged the trial judge's decision to deny his motion to suppress evidence found in his bedroom at his mother's home.[35] In addition to claiming that his mother did not have authority to consent to the search of his bedroom, he also argued that his mother's consent was not shown to have been voluntary by clear and convincing evidence.[36] When addressing whether the appellant's mother voluntarily consented to the search, we stated that our review of the record of the suppression hearing would be conducted under the standard of review provided in *Guzman*.[37] After viewing "the historical facts in the light most favorable to the trial court's ruling[,]" we held "that the mother's consent was voluntary."[38]

In *Manzi v. State*, we granted the appellant's petition for discretionary review to decide whether the deferential or the *de novo* standard of review set out in *Guzman* "applies to a trial court's determination of historical facts when that determination is based solely on affidavits."[39] At trial, the appellant filed a motion to suppress methamphetamine discovered by police during a search of his hotel room that the appellant claimed was conducted without his voluntary consent.[40] The trial judge denied the motion based only on opposing affidavits from the appellant and the State.[41] The court of appeals determined that it would review the trial court's resolution of the historical facts under the

---

29. 10 S.W.3d at 327, 332–33 (Tex.Crim.App. 2000).

30. *Id.* at 332.

31. *Id.*

32. *Id.*

33. *Id.*

34. *Id.*

35. 17 S.W.3d 677, 681–82 (Tex.Crim.App. 2000).

36. *Id.* at 682–83 n. 3.

37. *Id.* at 683.

38. *Id.*

39. 88 S.W.3d 240, 241 (Tex.Crim.App.2002).

40. *Id.*

41. *Id.*

deferential standard of review,[42] and held that the "trial court did not err in finding there was clear and convincing evidence that appellant voluntarily consented to the search of his hotel room."[43] We found that the court of appeals applied the correct standard of review.[44] In doing so, we stated: "Trial courts are the traditional finders of fact, and their determinations of historical facts are entitled to deference."[45]

In this case, when determining whether the trial judge erred in denying Montanez's motion to suppress, the court of appeals applied a factual sufficiency standard of review. The court's decision to apply such a standard of review is shown by the following: (1) the court's determination that its review of the factual determinations made by the trial court is affected by the clear and convincing evidence burden of proof, which applied to the State at the suppression hearing; and (2) the court's conclusion that the record does not contain clear and convincing evidence to support the trial court's finding that Montanez's consent to search was voluntary. By applying this standard, the court of appeals failed to afford any amount of deference to the trial court's determination of the historical facts that are supported by the record. Such an approach impermissibly eliminates the abuse of discretion standard of review provided in *Guzman.* The fact that the State bore the burden of proving by clear and convincing evidence that Montanez voluntarily consented to the search at the suppression hearing does not change the standard of review on appeal. In its petition for discretionary review, the

State maintains that the burden of proof is "incorporated into the ultimate decision as to whether the trial court abused its discretion...." We agree. The issue is whether, after affording almost total deference to the trial court's determination of historical facts that are supported by the record, the trial court abused its discretion by finding that the State proved by clear and convincing evidence that Montanez voluntarily consented to the search of the vehicle.

■ While we conclude that the court appeals applied the wrong standard of review, we recognize our precedent is somewhat unclear as to which standard of review under *Guzman,* deferential or *de novo,* applies to the videotape of the traffic stop and subsequent search. In *Carmouche,* we stated that we would not give "almost total deference" to the historical factual determinations made by the trial court, in part, because "the nature of the evidence in the videotape does not pivot on an evaluation of credibility and demeanor."[46] Later, in *Manzi,* we held that the deferential standard of review applies to a trial court's determination of historical facts when that determination is based solely on conflicting affidavits.[47] We reasoned that "*Guzman* did not purport to hold that historical fact issues could be reviewed *de novo* if credibility and demeanor considerations were absent."[48] We also noted, "[i]n *Anderson v. Bessemer City,* the Supreme Court held that appellate courts should review a trial court's determination of historical facts under a deferential standard, even if that determi-

---

**42.** *Id.* at 242; *Manzi v. State,* 56 S.W.3d 710, 715–16 (Tex.App.-Houston [14th Dist.] 2001).

**43.** *Manzi,* 56 S.W.3d at 719.

**44.** *Manzi,* 88 S.W.3d at 244.

**45.** *Id.*

**46.** 10 S.W.3d at 332.

**47.** 88 S.W.3d at 241.

**48.** *Id.* at 243.

nation was *not* based on an evaluation of credibility and demeanor."[49] We went on to quote the following excerpt from *Anderson:*

> The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much. As the Court has stated in a different context, the trial on the merits should be "the 'main event' ... rather than a 'tryout on the road.'" For these reasons, review of factual findings under the clearly-erroneous standard—with its deference to the trier of fact—is the rule, not the exception.[50]

We find the Supreme Court's rationale in *Anderson* equally applicable to the videotape evidence in this case. Therefore, we hold that the deferential standard of review in *Guzman* applies to a trial court's determination of historical facts when that determination is based on a videotape recording admitted into evidence at a suppression hearing.

**Conclusion**

Having determined that the court of appeals applied the incorrect standard of review, we reverse the judgment of the court of appeals and remand this case to that court for further proceedings consistent with this opinion.

KELLER, P.J., concurred without opinion.

MEYERS, J., filed a dissenting opinion.

WOMACK, J., filed a dissenting opinion.

JOHNSON, J., filed a dissenting opinion.

MEYERS, J., filed a dissenting opinion.

Man, these suppression hearings can be tricky little devils. There are dozens of reasons for these get-togethers and they usually entail different aspects of how evidence is discovered and/or suppressed. *See* Texas Code of Criminal Procedure Articles 38.21–38.23.

First, these hearings don't even need to be a hearing. The trial judge can review all of the motions and responses absent live testimony. And, again, as we all know, the rules of evidence don't even apply. *See Granados v. State,* 85 S.W.3d 217, 227 (Tex.Crim.App.2002). The trial judge is under no obligation to make findings of fact and conclusions of law,[1] and occasionally we have to search the entire record to determine if they have even ruled on the motion. See *Montanez v. State,* 143 S.W.3d 344, 345 (Tex.App.-Waco 2004). Next comes the fun part—APPELLATE REVIEW. Here is just a short list

---

**49.** *Id.* (original emphasis) (citing *Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

**50.** *Id.* (citing *Anderson,* 470 U.S. at 574–75, 105 S.Ct. 1504).

**1.** *See State v. Terrazas,* 4 S.W.3d 720, 728 (Tex.Crim.App.1999)

of the factors that the courts of appeals have to consider:

1. Abuse of discretion
2. Historical facts
3. Questions of demeanor
4. Questions of credibility
5. Burdens of proof
6. Deferral
7. *De novo* review
8. Probable cause
9. Reasonable suspicion
10. Voluntariness
11. Preponderance of evidence
12. Clear and convincing evidence
13. Consent
14. State action
15. Inevitable discovery
16. Attenuation

These hearings may involve a single aspect of this list or a whole fruit salad. We seem to treat the hearing itself as informally as our bridge club and then expect the appeal process to mirror the second Vatican Council. Because this Court could not live with the standards of appellate review set forth in *Carter* and *DuBose*,[2] eight years ago, we came up with a ruling that was to be the end all for the appellate courts to follow in every type of suppression review—The Great ~~Gatsby~~ Guzman. *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim.App.1997). Unfortunately, *Guzman* was tailored to fit suppression hearings that dealt with probable cause. That's not our question here and *Guzman* is not like Robitussin, you can't put it on every injury and expect a cure and that is exactly where I think the majority is heading.

The issue in *this case* is identical to the issue we unanimously ruled on in *Carmouche v. State*, 10 S.W.3d 323 (Tex.Crim. App.2000). The court of appeals did not err by failing to apply a *Guzman* standard of review because there is no issue of credibility and demeanor of the witnesses in this case. This is not a review of a cold record, rather it is the court of appeals watching the exact same videotape that the trial judge watched and then holding that the trial judge made an incorrect ruling. The trial judge was not in a better position to review the evidence as he would be in a situation of live testimony.[3]

In a situation such as the one before us, when the appellate court has the exact same quality of evidence before it on review that the trial judge had before him in a suppression hearing, it is not necessary to view the evidence in the light most favorable to the trial court, and it is not necessary to give almost total deference to the decision of the trial judge. Satisfying a burden of proof necessarily involves weighing evidence. For a preponderance of the evidence, any evidence that tips the scales is sufficient. For evidence to be clear and convincing, it must be "highly probable or reasonably certain."[4] And, as we all know, the highest burden is beyond a reasonable doubt. As we stated in *Carmouche*, "the nature of the evidence presented in the videotape does not pivot 'on an evaluation of credibility and demeanor.' Rather, the videotape presents indisputable visual evidence contradicting essential portions of [the officer's] testimony. In these narrow circumstances, we cannot blind ourselves to the videotape evidence

---

2. *See State v. Carter*, 915 S.W.2d 501 (Tex. Crim.App.1996); *DuBose v. State*, 915 S.W.2d 493 (Tex.Crim.App.1996).

3. While Officer Bridges testified to his version of the stop, the videotape showed the real story and offered indisputable evidence of

whether Appellant freely and voluntarily consented to the search.

4. *See* Black's Law Dictionary 457 (Abridged 7th Edition 2000).

simply because [the officer's] testimony may, by itself, be read to support the ... holding." 10 S.W.3d at 332.

The trial judge improperly chose to disregard the evidence on the videotape that weighed against the State; evidence that made the State unable to show by clear and convincing evidence that Appellant freely and voluntarily consented to the search. Disregarding such evidence is error. The court of appeals properly reviewed this evidence and held that there was not clear and convincing evidence to support the State's claim that Appellant freely and voluntarily gave consent to search the vehicle.

I would affirm the decision of the court of appeals. Therefore, I respectfully dissent.

WOMACK, J., filed a dissenting opinion.

The Court decides, "on [its] own initiative, [to] review whether the court of appeals correctly decided that an implied adverse ruling on Montanez's motion to suppress was made by the trial court." *Ante,* at 104.

I believe that the Court should give the parties notice of this decision and an opportunity to brief the issue. That "the State briefed and Montanez had an opportunity to brief in the court of appeals" (*ibid.*) is not satisfactory. First, the issue in the Court of Appeals was whether the

trial court's ruling was erroneous, while the issue in this court is the Court of Appeals' decision. It could not have been briefed before the Court of Appeals rendered its decision.

More important is the principle, which is a rudiment of due process, that a party should have notice that a court will consider an issue and an opportunity to be heard.

I respectfully dissent to the decision of the issue without notice.

JOHNSON, J., filed a dissenting opinion.

Our case law is replete with examples of the proper standard of review on issues that are not reliant upon a determination of credibility. Just six years ago, in *Carmouche v. State,* 10 S.W.3d 323 (Tex.Crim. App.2000), we declined to give almost total deference to the determinations of historical fact by the trial court because "the nature of the evidence in the videotape does not pivot on an evaluation of credibility and demeanor." *Carmouche* at 332.

From 1981, the time at which the courts of civil appeals became courts of appeals and this Court became a true high court, until 1997, the standard for deference to the findings of trial courts on fact questions was "great deference."[1] The first appearance of "almost total deference" appeared in Presiding Judge McCormick's concurring opinion in *Yarborough v. State,*

---

1. *See, e.g., Torres v. State,* 182 S.W.3d 899 (Tex.Crim.App.2005); *Kothe v. State,* 152 S.W.3d 54 (Tex.Crim.App.2004); *Gibson v. State,* 144 S.W.3d 530 (Tex.Crim.App.2004); *Swearingen v. State,* 143 S.W.3d 808 (Tex. Crim.App.2004); *Hanks v. State,* 137 S.W.3d 668 (Tex.Crim.App.2004); *Laney v. State,* 117 S.W.3d 854 (Tex.Crim.App.2003); *Guajardo v. State,* 109 S.W.3d 456 (Tex.Crim.App.2003); *Swearingen v. State,* 101 S.W.3d 89 (Tex.Crim. App.2003); *Herron v. State,* 86 S.W.3d 621 (Tex.Crim.App.2002); *Corbin v. State,* 85 S.W.3d 272 (Tex.Crim.App.2002); *State v.* *Scheineman,* 77 S.W.3d 810 (Tex.Crim.App. 2002); *Johnson v. State,* 68 S.W.3d 644 (Tex. Crim.App.2002); *Roquemore v. State,* 60 S.W.3d 862 (Tex.Crim.App.2001); *Villarreal v. State,* 935 S.W.2d 134 (Tex.Crim.App.1996); *State v. Carter,* 915 S.W.2d 501 (Tex.Crim. App.1996); *Vargas v. State,* 838 S.W.2d 552 (Tex.Crim.App.1992); *Young v. State,* 826 S.W.2d 141 (Tex.Crim.App.1991); *Miller–El v. State,* 748 S.W.2d 459 (Tex.Crim.App.1988); *Gold v. State,* 736 S.W.2d 685 (Tex.Crim.App. 1987).

947 S.W.2d 892 (Tex.Crim.App.1997), in which he said, "I believe that we should trust the trial courts to do their job fairly and announce a rule that the appellate courts in this State should show almost total deference to a trial court's ruling on a *Batson v. Kentucky* claim since the trial court and not the appellate courts are in the best position to make the call." *Id.* at 897. (McCormick, P.J., concurring.) In *Joe Rivera Guzman v. State,* 955 S.W.2d 85 (Tex.Crim.App.1997), Presiding Judge McCormick announced just such a rule saying, "However, as a general rule, the appellate court, including this Court, should afford almost total deference to a trial court's determinations of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor.... The appellate courts, including this Court, should afford the same amount of deference to trial courts' rulings on 'applications of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Id.* at 89. The opinion also cited to Judge McCormick's concurring opinion in *Villarreal v. State,* 935 S.W.2d 134, 139 (Tex.Crim.App.1996) ("amount of deference appellate courts afford trial courts' rulings turns on which 'judicial actor is better positioned' to decide the issue in question"). *Joe Rivera Guzman* thus set out a narrow rule: almost total deference on questions of fact that turn on credibility or demeanor. However, the only authority cited for that proposition was Presiding Judge McCormick's concurring opinion in *Villarreal.*

Since 1981, 127 opinions from this Court have used the term "great deference" in various contexts, 94 before *Joe Rivera Guzman* and 33 after it.

I note that *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), on which the majority relies, is a federal civil case and thus is subject to very different rules and standards of proof and review. *See, e.g., Manzi v. State,* 88 S.W.3d 240, 245 (Womack, J., concurring) ("The Supreme Court decision in *Anderson v. Bessemer City,* on which the Court relies today, is inadequate to resolve the issue for us because we do not have the rule of procedure that the federal courts do. *Anderson* construed a rule. The decision to defer to findings of fact that are based on documentary evidence, rather than to find the facts *de novo,* was made when the rules [sic] was adopted, not in *Anderson.*")

*Anderson* is also now more than twenty years old and predates many of our decisions on what deference is due to lower courts. It has been cited in only fourteen opinions, eleven of which were published. Of those eleven opinions, one was a concurring opinion, and eight cited *Anderson* in support of rulings on *Batson* claims, an issue that clearly involves determination of credibility and, especially, demeanor. One of the remaining two opinions, *Kelly v. State,* 163 S.W.3d 722 (Tex.Crim.App. 2005), concerned a motion for speedy trial and addressed only the issue of the proper degree of deference to the trial court as to inferences drawn from undisputed facts. *Id.* at 726. In the other remaining opinion, *Manzi,* the issue was the level of deference to be afforded rulings made only on the basis of affidavits. The *Manzi* majority asserted that *Benito Guzman v. State,* 85 S.W.3d 242 (Tex.Crim.App.2002), a *Batson* case, relied "heavily" on United States Supreme Court precedent, then cited *Anderson* and quoted a section from it, emphasizing that deference is due when the findings are not based on credibility, *"but are based instead on physical or doc-*

*umentary evidence or inferences from other facts." Id.* (Italics in original.)

The *Manzi* majority also stated that *"[Benito] Guzman* did not purport to hold that historical fact issues could be reviewed *de novo* if credibility and demeanor considerations were absent." *Manzi* at 243. But as Judge Womack noted in his concurrence, "it is also true that *[Benito Guzman]* did not purport to hold that the same standard of almost total deference should apply when credibility and demeanor considerations were absent." *Id.* at 248 (Womack, J. concurring). Indeed, the standard used by the Supreme Court in *Anderson* was "clearly erroneous,"[2] a far cry from "almost total deference."

The *Manzi* majority noted that "the fact remains that it is traditionally the role of the trial court to resolve issues of historical fact, whether or not credibility and demeanor determinations are involved." *Id.* Resolution of fact issues is indeed one of the traditional roles of a trial court, but that is not to say that appellate review of the execution of such traditional roles is barred or inappropriate. Indeed, almost everything a trial court does is subject to appellate review; under some standard, whether "almost total deference" or *de novo.*

A high degree of deference to determinations of fact issues based on affidavits may be appropriate, as the trial court is well acquainted with the circumstances and may be acquainted with one or more of the affiants, either personally or by reputation. Credibility may also be judged by both internal and external consistency of the statements in an affidavit. Some hint of "demeanor" may be gleaned from the language and tone.[3] Videotapes are a different matter; they are what they are. An appellate "judicial actor" is in no worse position to determine fact issues presented by the tape than is a trial court.

While some degree of deference is due, we do not owe "almost total" deference to a lower court's finding that is based on matters that rely not at all on credibility or demeanor. I believe that we should return unequivocally to the standard of "great deference." As the United States Supreme Court said in *Anderson*, "This is not to suggest that the trial judge may insulate his findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination." *Id.* at 575, 105 S.Ct. 1504.

I respectfully dissent.

**2.** "Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.... Rule 52(a) ... states straightforwardly that 'findings of fact shall not be set aside unless clearly erroneous.'" *Anderson v. City of Bessemer,* 470 U.S. 564, 573–574, 105 S.Ct. 1504, 84 L.Ed.2d 518.

**3.** *See, e.g., Kelly v. State,* 163 S.W.3d 722, 726–27 (Tex.Crim.App.2005) ("Moreover, the trial judge's personal knowledge of the parties and the sequence of events do in fact place him in a better position to draw inferences than an appellate court without such familiarity.").