Opinion issued September 27, 2007










 

 






In The

Court of Appeals

For The

First District of Texas




NOS. 01-06-00224-CR

 01-06-00225-CR

 01-06-00226-CR

 01-06-00227-CR




JUSTICE FRIMPONG MANSON Appellant


V.


THE STATE OF TEXAS, Appellee




On Appeal from the 240th District Court

Fort Bend County, Texas

Trial Court Cause Nos. 40,866; 40,867; 40,868 A; & 43,182





M E M O R A N D U M O P I N I O N


 Justice Frimpong Manson ("Manson") appeals the trial court's denial
of his motion to suppress prior recorded statements. Concluding that the
trial court acted within its discretion in denying the motion, we affirm.

Background

In accord with the deferential standard of review applicable to the trial
court's denial of Manson's motion to suppress, we recite the facts in the
light most favorable to the trial court's ruling. See State v. Kelly, 204
S.W.3d 808, 818 (Tex. Crim. App. 2006).

In September 2004, Officer Wood of the Rosenberg Police
Department responded to a reported incident of indecency with a child. 
Wood, who was in plain clothes, drove his unmarked car to the family's
apartment that morning to investigate the report. Other uniformed officers
in marked patrol cars also arrived at the scene to aid in the investigation. 

Wood went into the home to speak with the victim's mother. While
he was interviewing her, Manson called numerous times. During one of the
calls, Wood spoke with Manson and asked him to return to the apartment so
that they could talk. 

Manson voluntarily drove himself to the location and met Wood
outside the apartment. Wood identified himself as a police officer and
explained that he was there to investigate the charge of indecency with a
child. Wood suggested to Manson, "[l]et's go sit in my car. You can sit in
the passenger's seat, and I'll sit in the driver's seat, sit in the car so we can
talk." 

Manson got into the car and sat in the front passenger seat as
requested. Wood started the car to run the air conditioning and explained
that he planned to tape record their conversation. Wood then turned on the
tape recorder that was sitting on the armrest between the passenger and
driver's seats and told Manson: "First off, I need to read you your Miranda
warning." According to Wood's procedure, he read each right to Manson
and then asked him if he understood that right. Manson replied that he
understood and agreed to waive his rights, and, without prompting, gave a
statement in which he confessed to improper physical contact with the
victim. 

Following Manson's statement, Wood instructed another officer at the
scene to arrest Manson. That officer placed Manson under arrest and took
him to the Rosenberg city jail for processing. Manson was charged with
indecency with a child. At some point after processing, Manson was
transferred to the Fort Bend County jail. 

A few weeks later, Officer Lilly of the Harris County Sheriff's Office
visited Manson at the Fort Bend County jail. Lilly told Manson that he was
investigating allegations against Manson of sexual misconduct occurring in
Harris County and gave him some information about the possible charges,
including the fact that they involved the same victim. Then, Lilly recited the
warnings verbatim from the Miranda form used by law enforcement
officers. Lilly also advised Manson that he would be recording the
statement. Manson waived his Miranda rights and agreed to give a
statement, admitting that he knew he had a problem and wanted to get some
help. 

After the interview, Lilly discovered that the recording equipment did
not work properly and did not make a recording. The next day, Lilly
returned with a video recorder and asked Manson if he was willing to give
another statement. Lilly repeated each of the Miranda warnings to Manson,
This time, Lilly recorded the entire interview. During the interview, Manson
confessed to further conduct that led to the three additional charges of
aggravated sexual assault against him. 

Officer Lilly testified that he did not deprive Manson of food, water,
or sleep, or otherwise coerce him into giving the statement. Manson did not
invoke his right to an attorney in either interview and did not indicate that he
did not want to be recorded. 

Manson initially entered a plea of not guilty on all counts. (1) Before
trial, Manson sought to suppress the recorded statements. The court heard
evidence and denied the motion. At the State's request, the trial court
entered findings of fact and conclusions of law supporting its denial of
Manson's motion to suppress. They include findings that: 

· the testimony of Officers Woods and Lilly was
trustworthy and credible; 

· Manson's testimony describing the circumstances
surrounding his statements was not credible; and 

· both Wood and Lilly had refrained from asking Manson
any questions before giving Manson his Miranda
warnings. 

The trial court also concluded that: (1) Manson was warned of his Miranda
rights before making the confessions; (2) Manson knowingly waived his
right to an attorney on each occasion; and (3) Manson's confessions "were
freely and voluntarily made without any compulsion or persuasion," and
thus were admissible at trial. 

Following the court's denial of the motion to suppress, the case
proceeded to trial. After the State rested its case in chief, Manson changed
his plea to guilty on all four counts and elected to have the jury assess his
punishment. The jury determined punishment for each count, assessing ten
years' confinement for the count of indecency with a child, and confinement
for sixty years, twenty-five years, and fifty years, respectively, for each
count of aggravated sexual assault. Manson preserved and now pursues his
right to appeal the pretrial motion to suppress. 

Motion to Suppress

Texas law codifies procedural safeguards designed to ensure that the
custodial interrogation of a defendant does not violate that individual's
constitutional privilege against self-incrimination. Tex. R. Crim. Proc.
Ann. art. 38.22 § 2 (Vernon 2005); see Miranda v. Arizona, 384 U.S. 436,
444, 86 S. Ct. 1602, 1612 (1966); Wilkerson v. State, 173 S.W.3d 521, 526
n.14 (Tex. Crim. App. 2005) (Article 38.22 adds to safeguards outlined in
Miranda). When a defendant moves to suppress a prior statement on the
grounds that it was not given voluntarily, the trial court must independently
determine whether the statement was voluntary and admissible. Tex. R.
Crim. Proc. Ann. art. 38.22, § 6 (Vernon 2005). 

Standard of review

When, as here, the trial court makes explicit fact findings to support
its ruling on a motion to suppress, we determine whether the evidence, when
viewed in the light most favorable to the trial court's ruling, actually
supports those findings. Kelly, 204 S.W.3d at 818. Because the trial court is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony, we give almost total deference to its
determination of the historical facts that the record supports, especially when
they turn on an evaluation of credibility and demeanor. Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We likewise defer to the trial
court's rulings on mixed questions of law and fact if the resolution of those
ultimate questions turns on an evaluation of credibility and demeanor. 
Montanez v. State, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006);
Guzman, 955 S.W.2d at 89. We review de novo a trial court's rulings on
mixed questions of law and fact only when the trial court's rulings do not
turn on the credibility and demeanor of the witnesses. Estrada v. State, 154
S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson v. State, 68 S.W.3d 644,
652-53 (Tex. Crim. App. 2002). 

 The trial court's ruling rests entirely on its express determinations
concerning the credibility of the witnesses' testimony. Consequently, a
highly deferential standard applies in examining whether its findings amount
to clear and convincing evidence that Manson made his statements
voluntarily. 

Denial of Manson's motion

Manson claims that the trial court erroneously denied his motion to
suppress because the officers' initial efforts to conduct each of the
interviews occurred without the safeguards required by Miranda and thus
tainted any statement made following the Miranda warnings. He complains
that: 

· Officer Wood never told him the purpose of the investigation or
that Manson was free to leave, and that he did not feel he was
free to leave;

· he did not want to give a statement, but did so because Officer
Wood told him that he was making things harder for himself by
not giving a statement; 

· he asked Officer Lilly for an attorney before making his
statement, but Lilly responded that Manson would receive
probation if he cooperated by just giving the statement. 

Manson's complaints are all premised on his version of events. Both
officers disputed Manson's testimony. They averred that they did not
discuss any of the charges with Manson until he heard the Miranda
warnings, acknowledged that he understood them, and expressed his intent
to waive his rights. The trial court found credible the officer's version of
events and specifically found that Manson's testimony on these same issues
not credible.

An accused who has received the Miranda warnings has been
sufficiently informed of the nature of his rights, so a waiver on that basis is
considered a knowing and intelligent one. Tex. R. Crim. Proc. Ann. art.
38.22, §§ 2, 6; see Patterson v. Illinois, 487 U.S. 285, 296, 300, 108 S. Ct.
2389, 2397-99 (1988). The evidence, viewed in light of the trial court's
credibility determinations, supports its findings that the officers timely and
properly informed Manson of his Miranda rights and that, on each occasion,
he "did then knowingly waive his right to an attorney and did then freely and
voluntarily, without being induced by any compulsion, threats, promises, or
persuasion," before making his oral confessions. Giving due deference to
the trial court's findings of fact, we hold that the trial court did not abuse its
discretion in determining that Manson voluntarily waived his rights before
giving each statement.

Conclusion

We affirm the judgment of the trial court. 



 Jane Bland

 Justice


Panel consists of Chief Justice Radack and Justices Hanks and Bland.

Do not publish. Tex. R. App. P. 47.2(b).


1. Each trial court cause number assigned in this case represents one of the counts
brought against Manson.