**NUMBER 13-10-00605-CR**
**COURT OF APPEALS**
**THIRTEENTH DISTRICT OF TEXAS**
**CORPUS CHRISTI - EDINBURG**



---

**DAVID VILLARREAL,**                                                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                      **Appellee.**

---

**On appeal from the 105th District Court
of Nueces County, Texas.**

---

**MEMORANDUM OPINION**

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Chief Justice Valdez**

Appellant, David Villarreal, pleaded guilty to the offense of aggravated robbery, a first-degree felony, with an affirmative deadly-weapon finding. *See* TEX. PENAL CODE ANN. § 29.03(a)(2), (b) (West 2003). The trial court sentenced Villarreal to fifteen years' confinement. By three issues, Villarreal challenges the trial court's denial of his motion

to suppress the evidence and his motions to suppress the witnesses' out-of-court and in-court identifications of the defendant. We affirm.

## I. BACKGROUND[1]

At approximately midnight on April 28, 2010, two men entered Cody's bar in Corpus Christi, Texas, and robbed several customers at gunpoint. Witnesses stated that the perpetrators were two Hispanic males wearing bandanas over their faces traveling in a white SUV with dark tinted windows. The police department then issued a "BOLO" ("be on the lookout for") for the white SUV. After hearing the BOLO, Officer Ralph Vasquez attempted to initiate a traffic stop of the white Tahoe in which Villarreal was traveling; however, the driver refused to stop, and the officer pursued the vehicle at a high speed. After crashing through two gates, the Tahoe came to a stop. Villarreal and the two other men in the Tahoe, Marcos Ayala and Uvaldo Davila, were then transported to the bar where several witnesses identified Villarreal as one of the men who had committed the robbery.

Villarreal filed a motion to suppress the evidence, claiming that Officer Vasquez did not have reasonable suspicion to initiate a stop of the vehicle, and motions to suppress the witnesses' out-of-court and in-court identifications.[2] After conducting a hearing, the trial court denied Villarreal's motion to suppress the evidence; however, the

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[2] In his motion to suppress evidence, Villarreal sought to suppress "any tangible evidence seized in connection with this case, including any firearms and/or wallets" that were seized by the police.

2

trial court did not rule on Villarreal's motions to suppress the out-of-court and in-court identifications.[3]

Pursuant to a plea agreement with the State, Villarreal pleaded guilty to one count of aggravated robbery with a deadly weapon finding. The trial court sentenced Villarreal to fifteen years' confinement.[4] The trial court certified Villarreal's right to appeal matters raised by written motion filed and ruled on before trial and not withdrawn or waived. This appeal followed.

## II.     MOTION TO SUPPRESS EVIDENCE

By his first issue, Villarreal contends that the trial court violated the Fourth Amendment by denying his motion to suppress the evidence. Specifically, Villarreal argues that the evidence against him was improperly obtained because Officer Vasquez did not have sufficient reasonable suspicion to initiate the stop of the Tahoe.

### A.     The Evidence

Officer Vasquez testified that just after midnight, he heard over his radio that a white SUV with dark tinted windows had been used by "at least two subjects" in a robbery at Cody's. Officer Vasquez stated that ten minutes after the robbery, he saw a white Tahoe about two blocks from Cody's bar.[5] Officer Vasquez observed the driver

---

[3] At the conclusion of the hearing on Villarreal's motions to suppress the out-of-court and in-court identifications, all parties agreed to reset the hearing for another date; however, no such hearing was ever held.

[4] Appellant also pleaded "true" to the allegations in the State's motion to revoke community supervision in a separate case. In that case, the trial court found Villarreal guilty of the offense of credit card abuse, revoked his probation, and sentenced him to two years' confinement in state jail to run concurrently with the fifteen-year sentence for aggravated robbery.

[5] According to Officer Vasquez, in his experience, people who have committed an armed robbery may stay in the area of the robbery for "[s]ubterfuge." Officer Vasquez explained, "There's [sic] a lot of residential areas. There's [sic] at least three apartment complexes, four apartment complexes within a half-mile radius. They could just duck in, sit there and wait."

3

alone in the front seat of the Tahoe and "two figures moving in the back seat of the vehicle." Officer Vasquez explained that he was unable to clearly see what the people in the Tahoe were doing because it had tinted windows. After driving behind the Tahoe for a few minutes, another officer joined the pursuit, and Officer Vasquez activated his overhead lights to initiate a traffic stop of the vehicle. According to Officer Vasquez, the driver of the Tahoe refused to stop and accelerated to approximately sixty miles per hour. Officer Vasquez pursued the Tahoe through residential areas and "down Carroll to Staples, Staples to Kostoryz, Kostoryz to Norton." Once they "hit" Norton, they "hit Lynnwood went back to Brawner; came around Brawner, [and] hit the next street over . . . ." While pursuing the Tahoe, Officer Vasquez

> observed the right—the left passenger throw out an object, right when [they] came from Brawner back onto Lynnwood . . . . Right when he rounded the corner, you could see him chunk something out.
>
> . . . .
>
> I observed the guy in the back right throw out looked like credit cards, wallets, when he rounded the corner; then we went down Baldwin, went through a parking lot on Ayers, went down a couple of other streets. We finally got to Bufford and stopped on 23rd Street, at a residence on 23rd.

According to Officer Vasquez, one of the objects he observed thrown from the Tahoe appeared to be a weapon because it was heavy, bulky and glimmered. Officer Vasquez stated that when the Tahoe traveled through the parking lot, the driver "crashed through two gates" and one of the gates hit Officer Vasquez's patrol car. Once the driver stopped the vehicle, the police officers initiated a "felony stop" requiring each occupant to exit the vehicle one at a time.

4

Officer Vasquez testified that he activated his overhead lights in an attempt to initiate an investigatory stop of the vehicle because he had a reasonable suspicion that the occupants may have been involved in the robbery at Cody's bar. Officer Vasquez explained he was suspicious because the Tahoe matched the description given by the witnesses, there was more than one person in the vehicle, the Tahoe was located only two blocks from Cody's bar, and Officer Vasquez spotted the Tahoe ten minutes after the robbery occurred. Officer Vasquez testified that he did not observe any traffic in the vicinity at that hour and that the Tahoe was the only white SUV with dark tinted windows on the road. Officer Vasquez also thought that it was suspicious that one person was driving and two people were riding in the back seat.

On cross-examination, Officer Vasquez acknowledged that he was not told the make, model, or approximate year of the vehicle. Officer Vasquez stated that when he "ran" the license plate number, he discovered it was from Houston, which Officer Vasquez did not find suspicious. Officer Vasquez agreed that it was "possible" that the fact that one person was driving while two people were riding in the back seat did not suggest that a crime was being committed or had been committed. When asked what crime he observed, Officer Vasquez stated that he observed the traffic violation of failure to maintain a single lane. Officer Vasquez acknowledged that he had not documented the traffic violation in his report and that the traffic violation was not included in the entire investigation file. Officer Vasquez stated that he thought he "might have" issued a citation but could not recall. Officer Vasquez did not have a copy of the citation. Officer Vasquez testified that two of the victims' cell phones were found in the Tahoe.

5

**B.    Standard of Review**

We review a trial court's ruling on a motion to suppress for an abuse of discretion.  *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010).  In reviewing a trial court's ruling on a motion to suppress evidence for an abuse of discretion, we use a bifurcated standard.  *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (en banc) (citing *Guzman v. State*, 955 S.W.2d 85, 88 (Tex. Crim. App. 1997) (en banc)); *see also Urbina v. State*, No. 13-08-00562-CR, 2010 Tex. App. LEXIS 6728, **3-7 (Tex. App.—Corpus Christi Aug. 19, 2010, pet. ref'd) (mem. op., not designated for publication).  We give almost total deference to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor.  *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman*, 995 S.W.2d at 89).  We "review de novo 'mixed questions of law and fact' that do not depend upon credibility and demeanor."  *Id.* (quoting *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)); *Guzman*, 995 S.W.2d at 89.

In our review, we must view the evidence in the light most favorable to the trial court's ruling.  *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling if it is supported by the record.  *Id.*

**C.    Applicable Law**

An investigative detention is a seizure for purposes of Fourth Amendment analysis. *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995).  To justify the detention, the state must provide evidence showing sufficient facts to prove that

reasonable suspicion existed that a particular person had engaged in criminal activity. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

Under the Fourth Amendment and article I section 9 of the Texas Constitution, a person has not been seized until he has yielded to a law enforcement officer's show of authority or when officers physically limit his movement. *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (holding that a seizure does not occur when the subject does not yield to an officer's show of authority); *Johnson*, 912 S.W.2d at 232, 234–235. When a suspect does not yield to an officer's show of authority, a seizure under the Fourth Amendment has not occurred. *Hodari*, 499 U.S. at 636; *Johnson*, 912 S.W.2d at 236. An officer's show of authority occurs when his actions cause a reasonable person to believe he or she is not free to leave. *Hernandez v. State*, 963 S.W.2d 921, 924 (Tex. App.—San Antonio 1998, pet. ref'd).

## D. Discussion

Officer Vasquez's activation of his overhead lights constituted a show of authority. *Id.* However, the driver of the Tahoe did not yield to Officer Vasquez's show of authority and instead led the police on a high speed chase. Therefore, the Tahoe and its occupants had not been seized under the Fourth Amendment until the driver yielded to the officer's show of authority by stopping the vehicle after crashing through the two gates. *See id.*

At the suppression hearing, Officer Vasquez testified that while in pursuit of the Tahoe, he observed the occupants, including Villarreal, throw credit cards, wallets, and an item appearing to be a weapon out of the window before the driver yielded to his show of authority. No evidence was presented to contest this testimony. Because the

7

undisputed testimony showed that those items were abandoned before any seizure occurred, federal and state constitutional protections from unreasonable seizures were not implicated. *See Hernandez*, 963 S.W.2d at 925. The uncontested evidence also showed that the driver of the Tahoe committed the crime of evasion. *See* TEX. PENAL CODE ANN. § 38.04(a) (West Supp. 2010) ("A person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him."). The violation of a law in an officer's presence provides sufficient authority to initiate a stop. *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982). Therefore, Officer Vasquez was justified in initiating a stop of the vehicle after he observed the driver commit this offense. *Id.*

Furthermore, Officer Vasquez could have formed a reasonable suspicion that the occupants of the Tahoe had been involved in the robbery based on the following: (1) the description of the vehicle; (2) the vehicle's proximity to Cody's bar; (3) the fact that Officer Vasquez spotted the Tahoe merely ten minutes after the robbery occurred and saw no other vehicles matching the description in the vicinity; (4) the driver's evasion of the police officers; (5) and because Officer Vasquez witnessed the occupants of the Tahoe throw credit cards, wallets, and other objects out of the vehicle during the pursuit. Accordingly, viewing the evidence in the light most favorable to the ruling, *see Kelly*, 204 S.W.3d at 818, we conclude that the trial court did not abuse its discretion by denying Villarreal's motion to suppress the evidence. *See Ross*, 32 S.W.3d at 856. We overrule Villarreal's first issue.

### III.     MOTIONS TO SUPPRESS IN-COURT AND OUT-OF-COURT IDENTIFICATIONS

By his second issue, Villarreal contends that the witnesses' field identifications of him were impermissibly suggestive and led to an irreparable misidentification. By his third issue, Villarreal contends that it was error for the trial court "to admit the in[-]court identification of [him] after unreliable out[-]of[-]court identification[s] taint[ed] any future dependable identifications of [him]."[6] The State counters that Villarreal has waived these issues because Villarreal abandoned these motions before pleading guilty and the trial court did not rule on them. We agree with the State.

To preserve error on a motion to suppress, a defendant is required to obtain a ruling from the trial court on the motion. TEX. R. APP. P. 33.1(a)(2); *Montanez v. State*, 195 S.W.3d 101, 104 (Tex. Crim. App. 2006); *Bollinger v. State*, 224 S.W.3d 768, 778 (Tex. App.—Eastland 2007, pet. ref'd) (holding defendant who failed to obtain a ruling on any of three pretrial motions to suppress failed to preserve error). Moreover, a defendant's right to appeal from a plea-bargained case is limited to, among other things, "those matters that were raised by written motion filed and ruled on before trial." TEX. R. APP. P. 25.2(a)(2)(A).

Here, the trial court explicitly ruled on Villarreal's motion to suppress the evidence, but it reset the hearing on Villarreal's motions to suppress the in-court and out-of-court identifications, and deferred making a ruling on those motions. All parties agreed that the hearing on Villarreal's motions should be reset to hear testimony from another witness for the State, and Villarreal's trial counsel reserved her argument for the conclusion of that hearing. However, no such continuance of the hearing was held, and

---

[6] We note that a trial was never held regarding Villarreal's guilt; therefore, the evidence was not admitted at trial. However, several of the identification witnesses testified at the suppression hearing. Furthermore, the trial court did not rule on these motions; therefore it is unknown whether it would have admitted the witnesses' identifications at trial.

9

the trial court did not make an oral or written ruling on Villarreal's motions to suppress the in-court and out-of-court identifications.

Under certain circumstances, not found in this case, a trial court may impliedly rule on a motion to suppress. *See Montanez*, 195 S.W.3d at 104-05. In *Montanez*, the defendant filed one pretrial motion to suppress, and the record did not contain a formal ruling from the trial court on the defendant's motion. *Id.* at 103. However, the record of the suppression hearing showed that the trial court stated a clear intent to rule on the motion the next day. *Id.* at 105. That intent was corroborated by the trial court's certification of the defendant's right to appeal. *Id.* In addition, the last line on the trial court's docket sheet stated "appeal preserved as to issues presented." *Id.* Citing those three indicators of the trial court's intent, the Texas Court of Criminal Appeals concluded that the trial court's actions and statements had "unquestionably indicate[d]" that the trial court made an adverse ruling on the defendant's motion to suppress. *Id.* at 105.

Here, Villarreal filed three separate motions to suppress, one of which was explicitly ruled upon by the trial court. The trial court failed to explicitly rule on the other two motions, and it did not state a clear intent to rule on those motions. On the contrary, the trial court instead reset the suppression hearing on those motions to hear additional evidence, and trial counsel reserved their arguments for that proceeding. In this case, unlike in *Montanez*, the record does not "unquestionably" reflect that the trial court specifically denied appellant's motion to suppress the out-of-court and in-court identifications of Villarreal. Instead, the record reflects only that the trial court ruled upon the motion regarding suppression of the evidence.

10

Moreover, Villarreal pleaded guilty, and as part of his plea agreement, Villarreal agreed to "waive all pretrial motions on file." *See Montanez*, 195 S.W.3d at 105 ("Indeed, a defendant can abandon a motion to suppress before entering a guilty plea."). The trial court's docket sheet shows that the trial court denied Villarreal's motion to suppress evidence concerning the traffic stop; however, the docket sheet merely shows that Villarreal's motions to suppress the identifications were heard on August 25 and August 30 and that the hearing was recessed without a determination. The next entry shows that Villarreal pleaded guilty. Based on these facts, we cannot conclude that the trial court implicitly made an adverse ruling on Villarreal's motions to suppress the witnesses' out-of-court and in-court identifications. Accordingly, we find nothing in the record before us upon which we could imply an adverse ruling by the trial court regarding those motions. Therefore, Villarreal has not preserved for our review the issues raised regarding his motions to suppress the out-of-court and in-court identifications. *See Montanez*, 195 S.W.3d at 105; *see also Sanchez v. State*, No. 01-09-00288-CR, 2010 Tex. App. LEXIS 3429, at *19 (Tex. App.—Houston [1st Dist.] May 6, 2010, pet. ref'd) (mem. op., not designated for publication) (concluding that the appellant failed to preserve his complaint regarding his motion to suppress because the trial court did not make a ruling on the motion and there was nothing in the record indicating that the trial court implicitly denied the motion); *Rios v. State*, No. 13-07-00220-CR, 2008 Tex. App. LEXIS 3904, at **5–7 (Tex. App.—Corpus Christi May 22, 2008, no pet.) (mem. op., not designated for publication) (explaining that the appellant had not preserved error regarding his motion to suppress because the trial court did not explicitly or implicitly rule on the motion); *Resendez v. State*, No. 14-07-00318-CR, 2008

11

Tex. App. LEXIS 3731, at **18–21 (Tex. App.—Houston [14th Dist.] May 20, 2008, no pet.) (mem. op., not designated for publication) (finding the facts of *Montanez* distinguishable and concluding there was nothing in the record indicating that the trial court made an implicit ruling on the appellant's motion to suppress). We overrule Villarreal's second and third issues.

## IV. CONCLUSION

We affirm the trial court's judgment.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
Tex. R. App. P. 47.2(b)
Delivered and filed the
15th day of December, 2011.