COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-241-CR

LONNIE BRETT WATSON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

In one point, Appellant Lonnie Brett Watson appeals the trial court’s admission of the results of his breath alcohol test.  We affirm.

II. Factual and Procedural Background

On May 4, 2004, at approximately 1:21 a.m., Officer Anthony Neal Maranto of the North Richland Hills Police Department was on patrol near Harwood and Grapevine Highway when he observed Watson’s truck stopped at a flashing yellow light in the middle of the roadway.
(footnote: 2)  Officer Maranto found the length of the stop unusually long in light of the fact that there was no oncoming traffic.
(footnote: 3)  He continued to observe the truck as it proceeded through the intersection.  Watson continued southwest and signaled a right to left lane change.  He then drove a couple of blocks with his left turn signal still blinking.  At some point, Watson decided to turn off Grapevine Highway onto a left-hand side street.  However, he quickly abandoned the turn, narrowly missed running into a concrete median, and returned to the main travel portion of Grapevine Highway.  Because Watson failed to signal this most recent lane change, Officer Maranto stopped him.

Officer Maranto testified at trial that Watson was the person driving the vehicle that night and that Watson provided his driver’s license and proof of insurance when asked.  Officer Maranto further testified that Watson’s speech was slurred, his eyes were glassy and bloodshot, and the smell of alcohol was on his breath.  Furthermore, Officer Maranto testified that he observed Watson’s balance as unsteady and noticed that there was a wet spot in the groin area of his pants. 

Watson admitted to Officer Maranto that he had been drinking, but he claimed that he had only had four “small glasses of beer.”  At this point, Officer Maranto testified that he asked Watson to perform some field sobriety tests.
(footnote: 4)  Watson scored poorly on all three tests.
(footnote: 5)  Officer Maranto placed Watson under arrest because he believed that Watson was driving while intoxicated. 

Officer Maranto transported Watson to the North Richland Hills Police Department, where Watson agreed to provide a sample of his breath for alcohol analysis.  The results of the Intoxilyzer 5000 indicated that Watson’s blood alcohol level exceeded the legal limit of .08.
(footnote: 6)
 At trial, Watson moved to suppress the results of the breath test on the grounds that the Intoxilyzer operator did not follow the regulations controlling administration of the breath test.  The trial court overruled Watson’s objections.  The charge to the jury, however, did instruct jurors that the breath test results could not be considered unless the State proved beyond a reasonable doubt that the proper methodology had been followed in administering the breath test.  The jury subsequently convicted Watson of driving while intoxicated (DWI), and the trial court assessed his punishment at sixty days’ confinement in the Tarrant County Jail and a fine of $800.  Watson brings one point on appeal.

III. Discussion

In one point, Watson contends that the trial court erred by overruling his motion to suppress and allowing the results of his breath test to be admitted.  In sum, Watson argues that the State failed to prove that the Intoxilyzer operator remained in his presence for at least fifteen minutes prior to administering the breath alcohol test.  We disagree.

A.
  
Standard of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact, even if the trial court’s determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Montanez v. State
, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); 
Johnson v. State
, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo
 
a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court’s ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court’s ruling.  
State v. Kelly
, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court’s ruling, supports those fact findings.  
Id
. at 818–19.  We then review the trial court’s legal ruling de novo
 
unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.  
Id
. at 819.

We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.  

B.  Applicable Law

Evidence of alcohol concentration, as shown by analysis of a specimen of the person’s breath taken at the request of a peace officer, is admissible at trial in a driving while intoxicated case.  
Tex. Transp. Code Ann.
 § 724.064 (Vernon 1999).  Breath specimens must be obtained and analyzed in accordance with the rules adopted by the Texas Department of Public Safety (DPS).  
Id
. at § 724.016; 
Atkinson v. State
, 923 S.W.2d 21, 23 (Tex. Crim. App. 1996), 
abrogated on other grounds by
 
Motilla v. State
, 78 S.W.3d 352 (Tex. Crim. App. 2002); 
Adams v. State
, 67 S.W.3d 450, 452 (Tex. App.—Fort Worth 2002, pet. ref’d).  
The rules adopted by DPS include the requirement that an Intoxilyzer technician continuously observe the person being tested for at least fifteen minutes before administering the test.
(footnote: 7)
 C.  Application

Here, Watson claims that the results of his breath test were inadmissible because the State failed to prove that the officer administering the test complied with the regulations adopted by DPS.  Specifically, Watson argues that the DPS-mandated fifteen-minute observation period of the suspect by the Intoxilyzer operator prior to administration of the breath test was not satisfied.

The record indicates that four separate time recording systems were in play at the time in question, none of which were synchronized.  However, because we are presented with a question of historical fact regarding the fifteen-minute observation period, and not a question of law, we must give almost total deference to the trial court’s factual determination that the fifteen-minute period of observation was satisfied.  
See Montanez
, 195 S.W.3d at 108–09.

The first of the time recording devices, the in-car video tape recorder, showed that Officer Maranto arrived at the sally port of the North Richland Hills Police Department with Watson at 1:49 a.m.  The video stops at 1:50 a.m.  The second time recording system was the video tape recorder in the Intoxilyzer room, which begins at 2:01 a.m. or 2:02 a.m.  The tape shows that the first and second breath tests were taken at 2:07 a.m. and 2:10 a.m., respectively.  The third time recording system would be that of the Intoxilyzer itself.  The Intoxilyzer is used to conduct the breath alcohol test, and it has its own timing system that automatically records the date and time on a printout when the test is administered.  In this case, the Intoxilyzer’s printout revealed that the first and second tests of Watson’s breath were administered at 2:06 a.m. and 2:09 a.m., respectively.  And lastly, the fourth timing system in play during the time period in question would be the time kept by Officer Brian Goke, the Intoxilyzer operator charged with making sure that the fifteen-minute observation period was satisfied prior to administering the test. 

Officer Goke testified that Watson was continuously in his presence for fifteen minutes before the test was administered.  He further testified that although he could not remember exactly what time Officer Maranto and Watson arrived at the North Richland Hills Police Department, it was his common practice to meet the officer and DWI arrestee in the sally port or at the door so that he could immediately begin his fifteen minute observation.  Officer Goke also testified that he always keeps time on his watch, which has a stop watch setting.  The video does show that Officer Goke repeatedly looked at his watch and that he looked at it when answering Officer Maranto’s question on how they were doing on time. 

Officer Maranto testified that he did not remember seeing Officer Goke actually in the sally port when he pulled in with Watson.  It was Officer Maranto’s recollection, however, that Officer Goke was monitoring his observation period as required for his position.  Officer Goke testified that he believed that on this particular occasion he did not enter the sally port, but rather he met up with Officer Maranto and Watson in the hallway on the way to book Watson in so that he could begin observing Watson. 

Watson testified the he did not see Officer Goke until just before he stepped into the testing room.  At trial he stated, “Just as you turn, there is a glass deal. Just as you turn, there is a hallway, and I saw him there.”  In an attempt to clarify his position, Watson added that he saw Officer Goke “[p]retty much right before you–right at the hallway of the door entrance, yeah.”  Watson could not indicate any time frame and admitted that he was not wearing a watch.  He did not know “by watch times” how long anything took.

Thus, because at a suppression hearing the trial judge is the sole trier of fact and judge of the credibility of witnesses and the weight to be given their testimony, the trial judge’s factual determinations based on the testimony of Officers Maranto and Goke must be given almost total deference.  
See Johnson
, 68 S.W.3d at 652–53.  The trial court could have inferred from the evidence that if Officer Maranto arrived at 1:49 a.m. and exited the car at 1:50 a.m., it was possible that Officer Goke met up with them at approximately 1:51 a.m. to begin his requisite fifteen-minute observation of Watson prior to administering the breath test.
(footnote: 8)  Accordingly, if Officer Goke met up with Officer Maranto and Watson within that one minute time frame, as he testified to, and started his observation at approximately 1:51 a.m, both a breath test administered at 2:06 a.m., as recorded by the Intoxilyzer, and at 2:07 a.m., as recorded on the video, would have satisfied the fifteen-minute observation period required by DPS. 

The trial court judged the credibility of the witnesses and found the testimony by Officers Maranto and Goke more convincing than that made by Watson.  It heard evidence that Officer Goke had a routine practice of meeting the officer and DWI arrestee at or near the sally port to begin his observation period, which was certainly before entering the testing room and turning on the video recorder.  Furthermore, it saw from the video that Officer Goke was checking his stopwatch to verify that he was satisfying the requisite fifteen-minute observation period mandated by DPS regulations.  The trial court believed from the testimony of Officers Maranto and Goke that the requisite fifteen-minute observation period elapsed prior to the administering of the 2:06 a.m. or 2:07 a.m. test. 

Therefore, we hold that the trial court did not err by admitting the results of Watson’s breath test and overruling his motion to suppress because viewed under the proper standard, the evidence supports the trial court’s determination that the statutory prerequisites for the admission of the breath test were satisfied.  Accordingly, giving great deference to the trial court’s factual determinations, and its judgment of the witnesses’ credibility, we overrule Watson’s sole point. 
 See Ross
, 32 S.W.3d at 855; 
Ballard
, 987 S.W.2d at 891.

IV. Conclusion

Having overruled Watson’s sole point, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: MCCOY, J.; CAYCE, C.J.; and WALKER, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: August 2, 2007

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Watson’s truck faced southwest at the 8400 block of Boulevard 26. Officer Maranto drove westbound on the 8500 block of Harwood, approaching that same intersection. 

3:
Watson was stopped in the middle of the road for an estimated fourteen seconds before he proceeded through the intersection.

4:
Officer Maranto had Watson perform the horizontal gaze nystagmus (HGN), the walk-and-turn, and the one-leg-stand field sobriety tests. 

5:
Watson scored six out of six clues on the HGN, six out of eight clues on the walk-and-turn, and three out of four clues on the one-leg-stand.

6:
The results of Watson’s breath sample revealed blood alcohol levels of .097 and .102 grams of alcohol per 210 liters of breath.

7:
The Texas Administrative Code provides, in relevant part: 

All breath alcohol testing techniques, in order to be approved, shall meet, but not be limited to, the following: (1) a period during which an operator is required to remain in the presence of the subject.  An operator shall remain in the presence of the subject at least 15 minutes before the test and should exercise reasonable care to ensure that the subject does not place any substances in the mouth.  Direct observation is not necessary to ensure the validity or accuracy of the test result.

37 
Tex. Admin. Code
 § 19.4(c)(1) (2007) (Tex. Dep’t of Pub. Safety, Breath Alcohol Testing Regs.).

8:
Officer Maranto testified that it takes roughly thirty-seconds to one minute to get the arrestee out of the sally port and to book-in.  He further testified that it is “pretty much standard procedure” that the Intoxilyzer operator meet the officer and DWI arrestee in the sally port or immediately inside the door to begin the observation period.