COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-241-CR

 

 

LONNIE BRETT WATSON                                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I. Introduction

In one point, Appellant
Lonnie Brett Watson appeals the trial court=s admission of the results of his breath alcohol test.  We affirm.

 

 








II. Factual and Procedural
Background

On May 4, 2004, at
approximately 1:21 a.m., Officer Anthony Neal Maranto of the North Richland
Hills Police Department was on patrol near Harwood and Grapevine Highway when
he observed Watson=s truck
stopped at a flashing yellow light in the middle of the roadway.[2]  Officer Maranto found the length of the stop
unusually long in light of the fact that there was no oncoming traffic.[3]  He continued to observe the truck as it
proceeded through the intersection. 
Watson continued southwest and signaled a right to left lane change.  He then drove a couple of blocks with his
left turn signal still blinking.  At some
point, Watson decided to turn off Grapevine Highway onto a left-hand side
street.  However, he quickly abandoned
the turn, narrowly missed running into a concrete median, and returned to the
main travel portion of Grapevine Highway. 
Because Watson failed to signal this most recent lane change, Officer
Maranto stopped him.








Officer Maranto testified at
trial that Watson was the person driving the vehicle that night and that Watson
provided his driver=s license
and proof of insurance when asked. 
Officer Maranto further testified that Watson=s speech was slurred, his eyes were glassy and bloodshot, and the
smell of alcohol was on his breath. 
Furthermore, Officer Maranto testified that he observed Watson=s balance as unsteady and noticed that there was a wet spot in the
groin area of his pants. 

Watson admitted to Officer
Maranto that he had been drinking, but he claimed that he had only had four Asmall glasses of beer.@  At this point, Officer Maranto
testified that he asked Watson to perform some field sobriety tests.[4]  Watson scored poorly on all three tests.[5]  Officer Maranto placed Watson under arrest
because he believed that Watson was driving while intoxicated. 

Officer Maranto transported
Watson to the North Richland Hills Police Department, where Watson agreed to
provide a sample of his breath for alcohol analysis.  The results of the Intoxilyzer 5000 indicated
that Watson=s blood
alcohol level exceeded the legal limit of .08.[6]








At trial, Watson moved to
suppress the results of the breath test on the grounds that the Intoxilyzer
operator did not follow the regulations controlling administration of the
breath test.  The trial court overruled
Watson=s objections.  The charge to the
jury, however, did instruct jurors that the breath test results could not be
considered unless the State proved beyond a reasonable doubt that the proper
methodology had been followed in administering the breath test.  The jury subsequently convicted Watson of
driving while intoxicated (DWI), and the trial court assessed his punishment at
sixty days= confinement
in the Tarrant County Jail and a fine of $800. 
Watson brings one point on appeal.

III. Discussion

In one point, Watson contends
that the trial court erred by overruling his motion to suppress and allowing
the results of his breath test to be admitted. 
In sum, Watson argues that the State failed to prove that the
Intoxilyzer operator remained in his presence for at least fifteen minutes
prior to administering the breath alcohol test. 
We disagree.

A.  Standard of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855 (Tex.
Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App.
1999).  Therefore, we give almost total
deference to the trial court=s rulings on (1) questions of historical fact, even if the trial court=s determination of those facts was not based on an evaluation of
credibility and demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Montanez v. State, 195 S.W.3d 101, 108B09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68
(Tex. App.CFort Worth
2004, pet. ref=d).  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652B53.








Stated another way, when
reviewing the trial court=s ruling on
a motion to suppress, we must view the evidence in the light most favorable to
the trial court=s
ruling.  State v. Kelly, 204
S.W.3d 808, 818 (Tex. Crim. App. 2006). 
When the trial court makes explicit fact findings, we determine whether
the evidence, when viewed in the light most favorable to the trial court=s ruling, supports those fact findings.  Id. at 818B19.  We then review the trial
court=s legal ruling de novo unless its explicit fact findings that
are supported by the record are also dispositive of the legal ruling.  Id. at 819.

We must uphold the trial
court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.  Armendariz v. State,
123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974
(2004); Ross, 32 S.W.3d at 856; Romero, 800 S.W.2d at 543.  

B. 
Applicable Law








Evidence of alcohol
concentration, as shown by analysis of a specimen of the person=s breath taken at the request of a peace officer, is admissible at
trial in a driving while intoxicated case. 
Tex. Transp. Code Ann. ' 724.064 (Vernon 1999).  Breath
specimens must be obtained and analyzed in accordance with the rules adopted by
the Texas Department of Public Safety (DPS). 
Id. at ' 724.016; Atkinson
v. State, 923 S.W.2d 21, 23 (Tex. Crim. App. 1996), abrogated on other
grounds by Motilla v. State, 78 S.W.3d 352 (Tex. Crim. App. 2002); Adams
v. State, 67 S.W.3d 450, 452 (Tex. App.CFort Worth 2002, pet. ref=d).  The rules adopted
by DPS include the requirement that an Intoxilyzer technician continuously
observe the person being tested for at least fifteen minutes before
administering the test.[7]

C.  Application

Here, Watson claims that the
results of his breath test were inadmissible because the State failed to prove
that the officer administering the test complied with the regulations adopted
by DPS.  Specifically, Watson argues that
the DPS-mandated fifteen-minute observation period of the suspect by the
Intoxilyzer operator prior to administration of the breath test was not
satisfied.








The record indicates that
four separate time recording systems were in play at the time in question, none
of which were synchronized.  However,
because we are presented with a question of historical fact regarding the
fifteen-minute observation period, and not a question of law, we must give
almost total deference to the trial court=s factual determination that the fifteen-minute period of observation
was satisfied.  See Montanez, 195
S.W.3d at 108B09.

The first of the time
recording devices, the in-car video tape recorder, showed that Officer Maranto
arrived at the sally port of the North Richland Hills Police Department with
Watson at 1:49 a.m.  The video stops at
1:50 a.m.  The second time recording system
was the video tape recorder in the Intoxilyzer room, which begins at 2:01 a.m.
or 2:02 a.m.  The tape shows that the
first and second breath tests were taken at 2:07 a.m. and 2:10 a.m.,
respectively.  The third time recording
system would be that of the Intoxilyzer itself. 
The Intoxilyzer is used to conduct the breath alcohol test, and it has
its own timing system that automatically records the date and time on a
printout when the test is administered. 
In this case, the Intoxilyzer=s printout revealed that the first and second tests of Watson=s breath were administered at 2:06 a.m. and 2:09 a.m.,
respectively.  And lastly, the fourth
timing system in play during the time period in question would be the time kept
by Officer Brian Goke, the Intoxilyzer operator charged with making sure that
the fifteen-minute observation period was satisfied prior to administering the
test. 








Officer Goke testified that
Watson was continuously in his presence for fifteen minutes before the test was
administered.  He further testified that
although he could not remember exactly what time Officer Maranto and Watson
arrived at the North Richland Hills Police Department, it was his common
practice to meet the officer and DWI arrestee in the sally port or at the door
so that he could immediately begin his fifteen minute observation.  Officer Goke also testified that he always
keeps time on his watch, which has a stop watch setting.  The video does show that Officer Goke
repeatedly looked at his watch and that he looked at it when answering Officer
Maranto=s question on how they were doing on time. 

Officer Maranto testified
that he did not remember seeing Officer Goke actually in the sally port when he
pulled in with Watson.  It was Officer
Maranto=s recollection, however, that Officer Goke was monitoring his
observation period as required for his position.  Officer Goke testified that he believed that
on this particular occasion he did not enter the sally port, but rather he met
up with Officer Maranto and Watson in the hallway on the way to book Watson in
so that he could begin observing Watson.       








Watson testified the he did
not see Officer Goke until just before he stepped into the testing room.  At trial he stated, AJust as you turn, there is a glass deal. Just as you turn, there is a
hallway, and I saw him there.@  In an attempt to clarify his
position, Watson added that he saw Officer Goke A[p]retty much right before youBright at the hallway of the door entrance, yeah.@  Watson could not indicate any
time frame and admitted that he was not wearing a watch.  He did not know Aby watch times@ how long
anything took.








Thus, because at a
suppression hearing the trial judge is the sole trier of fact and judge of the
credibility of witnesses and the weight to be given their testimony, the trial
judge=s factual determinations based on the testimony of Officers Maranto
and Goke must be given almost total deference. 
See Johnson, 68 S.W.3d at 652B53.  The trial court could have
inferred from the evidence that if Officer Maranto arrived at 1:49 a.m. and
exited the car at 1:50 a.m., it was possible that Officer Goke met up with them
at approximately 1:51 a.m. to begin his requisite fifteen-minute observation of
Watson prior to administering the breath test.[8]  Accordingly, if Officer Goke met up with
Officer Maranto and Watson within that one minute time frame, as he testified
to, and started his observation at approximately 1:51 a.m, both a breath test
administered at 2:06 a.m., as recorded by the Intoxilyzer, and at 2:07 a.m., as
recorded on the video, would have satisfied the fifteen-minute observation
period required by DPS. 

The trial court judged the
credibility of the witnesses and found the testimony by Officers Maranto and
Goke more convincing than that made by Watson. 
It heard evidence that Officer Goke had a routine practice of meeting
the officer and DWI arrestee at or near the sally port to begin his observation
period, which was certainly before entering the testing room and turning on the
video recorder.  Furthermore, it saw from
the video that Officer Goke was checking his stopwatch to verify that he was
satisfying the requisite fifteen-minute observation period mandated by DPS
regulations.  The trial court believed
from the testimony of Officers Maranto and Goke that the requisite fifteen-minute
observation period elapsed prior to the administering of the 2:06 a.m. or 2:07
a.m. test.         








Therefore, we hold that the
trial court did not err by admitting the results of Watson=s breath test and overruling his motion to suppress because viewed
under the proper standard, the evidence supports the trial court=s determination that the statutory prerequisites for the admission of
the breath test were satisfied. 
Accordingly, giving great deference to the trial court=s factual determinations, and its judgment of the witnesses= credibility, we overrule Watson=s sole point.  See Ross,
32 S.W.3d at 855; Ballard, 987 S.W.2d at 891.

IV. Conclusion

Having overruled Watson=s sole point, we affirm the trial court=s judgment.

 

PER CURIAM

 

PANEL F:    MCCOY, J.; CAYCE, C.J.; and WALKER, J.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
August 2, 2007

 

 











[1]See Tex. R. App. P. 47.4.





[2]Watson=s
truck faced southwest at the 8400 block of Boulevard 26. Officer Maranto drove
westbound on the 8500 block of Harwood, approaching that same intersection. 





[3]Watson
was stopped in the middle of the road for an estimated fourteen seconds before
he proceeded through the intersection.





[4]Officer
Maranto had Watson perform the horizontal gaze nystagmus (HGN), the
walk-and-turn, and the one-leg-stand field sobriety tests. 





[5]Watson
scored six out of six clues on the HGN, six out of eight clues on the
walk-and-turn, and three out of four clues on the one-leg-stand.





[6]The
results of Watson=s
breath sample revealed blood alcohol levels of .097 and .102 grams of alcohol
per 210 liters of breath.





[7]The Texas Administrative Code
provides, in relevant part: 

 

All
breath alcohol testing techniques, in order to be approved, shall meet, but not
be limited to, the following: (1) a period during which an operator is required
to remain in the presence of the subject. 
An operator shall remain in the presence of the subject at least 15
minutes before the test and should exercise reasonable care to ensure that the
subject does not place any substances in the mouth.  Direct observation is not necessary to ensure
the validity or accuracy of the test result.

 

37 Tex. Admin. Code '
19.4(c)(1) (2007) (Tex. Dep=t of Pub. Safety, Breath
Alcohol Testing Regs.).





[8]Officer
Maranto testified that it takes roughly thirty-seconds to one minute to get the
arrestee out of the sally port and to book-in. 
He further testified that it is Apretty much standard
procedure@ that
the Intoxilyzer operator meet the officer and DWI arrestee in the sally port or
immediately inside the door to begin the observation period.