# NO. 12-10-00041-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MICHAEL ANGELO BERBER,* *APPELLANT* | § | *APPEAL FROM THE 258TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *TRINITY COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Michael Angelo Berber appeals his conviction for murder. In two issues, Appellant argues that the evidence is insufficient to support his conviction and that the trial court should have suppressed a written statement he gave to the police. We affirm.

### BACKGROUND

In July 2007, one of Mark Wayne Haslett's neighbors knocked at the door of Haslett's trailer. He received no response. When he went into the trailer, he found Haslett on the floor, unclothed and with blood on his body. The neighbor called for assistance. Haslett had been stabbed and was dead. A subsequent police investigation coalesced around Appellant as the suspect. A neighbor reported having seen a person in the vicinity of Haslett's trailer. Appellant had told others that he was going to burglarize Haslett's home. And he told an acquaintance that he "did it" shortly after Haslett would have been killed. The acquaintance observed blood on Appellant's hands. The acquaintance later testified that Appellant changed his clothes and burned his bloody clothes. Another acquaintance testified later that Appellant woke him up and asked for clothing. He said Appellant had blood on him and that Appellant told him he had killed Haslett.

1

Texas Ranger Pete Maskunas located Appellant several months later and interviewed him. Appellant had been arrested in Harris County, Texas, and read his rights at that time at a magistrate's hearing. Maskunas referenced that recitation of Appellant's rights at the beginning of his recorded interview, but he did not advise Appellant of his rights during the recorded part of the interview. Appellant admitted killing Haslett. He claimed that he stabbed Haslett after Haslett attempted to engage him in unwanted sexual activity. Following the recorded statement, Maskunas asked Appellant to make a handwritten statement. Maskunas read Appellant his rights, and Appellant initialed a document indicating that he understood his rights and waived them. In his written statement, Appellant wrote that he went to Haslett's house to smoke a "joint." After he and Haslett smoked together, Haslett came out of his room in a state of undress. Appellant wrote that he "blacked out" and stabbed Haslett in the neck. He wrote that he went to his sister's house, washed himself, and got a shirt. A medical expert who examined Haslett's body concluded that he died as a result of stab or cutting wounds to his neck and that he had defensive wounds on his hands.

A Trinity County grand jury indicted Appellant for the felony offense of murder. Appellant pleaded not guilty. Appellant filed a motion to suppress the statements he made to Ranger Maskunas. A hearing was held, and the trial court suppressed Appellant's recorded statement because the recording did not contain a rendition of Appellant's rights as required by Texas Code of Criminal Procedure, article 38.22. The trial court denied Appellant's motion to suppress the written statement. A jury found Appellant guilty as charged and assessed punishment at imprisonment for life. This appeal followed.

SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant argues that the evidence is legally insufficient to support the verdict.

**Applicable Law**

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); *Ross v. State*, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004); *Willis v. State*, 192 S.W.3d 585, 592 (Tex. App.–Tyler 2006, pet. ref'd). When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the

2

verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality opinion). Under this standard, a reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *Id.*; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, a reviewing court defers to the fact finder's resolution of conflicting evidence unless that resolution is not rational in light of the burden of proof. *Brooks*, 2323 S.W.3d at 899–900. The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

A person is guilty of murder, as charged in this case, if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b) (Vernon 2003).

**Analysis**

Appellant argues that a rational finder of fact could not conclude beyond a reasonable doubt that he killed Haslett knowingly or intentionally because Appellant told the police that he "blacked out" during the incident. We disagree.

The jury may believe all, some, or none of any witness's testimony. *See Jones v. State*, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Appellant's statement to the police is not unlike a witness's testimony, and we perceive no reason that the jury could not have credited Appellant's statement that he stabbed Haslett but disbelieved his statement that he "blacked out" before doing so. There was evidence to support this conclusion. James Manis testified that Appellant's plan, prior to the murder, was to go to Haslett's house and "get" Haslett to perform a sex act on him "or something like that" and then to "cut his throat." Cody Gladney testified that Appellant asked him to help with a robbery and that killing Haslett was mentioned in the conversation. After the murder, Appellant told Gladney that he killed Haslett after Haslett propositioned him, but did not mention "blacking out." Instead, Appellant told Gladney that being propositioned "freaked him out" and that he stabbed Haslett. Appellant said he thought Haslett was dead and was surprised when Haslett jumped on his back. At that point, Appellant said he stabbed Haslett in the neck.

Viewing the totality of the circumstances in the light most favorable to the verdict, we conclude that the jury could have rationally found each element of murder beyond a reasonable

3

doubt. The jury's conclusion that Appellant killed Haslett knowingly or intentionally is supported by the evidence and is a reasonable conclusion to be drawn by a rational jury in light of the burden of proof. We overrule Appellant's first issue.

## SUPPRESSION OF WRITTEN STATEMENT

In his second issue, Appellant argues that the trial court erred in allowing his written statement to be admitted into evidence. Specifically, he asserts that the police used a forbidden two step procedure by which investigators obtain a statement without advising the suspect of his *Miranda* warnings and then elicit the same statement after the administration of those warnings.

### Standard of Review

We review a trial court's ruling on a motion to suppress in the light most favorable to the ruling. *See State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). The trial court judge is uniquely situated to observe firsthand the demeanor and appearance of a witness and to make factual determinations. *See State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)). The trial court is the sole trier of fact, and we must afford almost total deference to the trial court's factual conclusions. *See Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). We afford the same amount of deference to trial court's rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006). We review de novo wholly legal conclusions as well as mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Id*.

### Applicable Law

In order for a statement taken from a person who is in custody to be admissible, the police must advise the person that he has the right to remain silent, that any statement he makes can be used against him, and that the person has a right to an attorney before the statement is taken. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966). In *Miranda*, the Court concluded that the possibility of coercion inherent in custodial interrogations unacceptably raises the risk that a suspect's privilege against self-incrimination might be violated. *See United States v. Patane*, 542 U.S. 630, 639, 24 S. Ct. 2620, 2627, 159 L. Ed. 2d 667 (2004)

4

(plurality opinion); *Miranda*, 384 U.S., at 467, 16 L. Ed. 2d 694, 86 S. Ct. 1602. To protect against this danger, the *Miranda* rule creates a presumption of coercion, in the absence of specific warnings, that is generally irrebuttable for purposes of the prosecution's case in chief. *Patane*, 542 U.S. at 639, 24 S. Ct. at 2627. Also present in the Court's calculation is that an unwarned statement is less likely to be the product of the suspect's "free choice," *Miranda*, 384 U.S. at 458, 86 S. Ct. at 1619, although the voluntariness of the statement is a different but related inquiry. *See Dickerson v. United States*, 530 U.S. 428, 444, 120 S. Ct. 2326, 2336, 147 L. Ed. 2d 405 (2000). Accordingly, "to reduce the risk of a coerced confession and to implement the Self-Incrimination Clause," the Court determined that *Miranda* warnings must be given to suspects before custodial interrogations. *Chavez v. Martinez*, 538 U.S. 760, 790, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2003) (Kennedy, J., concurring in part and dissenting in part).

Texas has a more specific rule, requiring that the customary *Miranda* warnings be given along with a warning that the suspect may terminate the interview at any time. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005). Unlike *Miranda* warnings, which have no procedural requirements beyond that they be given, the warnings required by article 38.22 must appear on the resulting written statement or oral recording as a prerequisite to admissibility. *Id*. art 38.22, §§ 2(a), 3(a)(2). Generally, a statement obtained from a custodial interrogation that does not comply with these rules cannot be used in a trial. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a), (b).

The Supreme Court has held that confession obtained as part of a two step interrogation violated "*Miranda*'s constitutional requirement." *Missouri v. Siebert*, 542 U.S. 600, 604, 124 S. Ct. 2601, 2605, 159 L. Ed. 2d 643 (2004). The Court described the two step interrogation as a "technique of interrogating in successive, unwarned and warned phases" and termed it a "new challenge to *Miranda*." *Id.* at 609, 124 S. Ct. at 2608. The threshold question presented in such a case, a plurality of the Court concluded, is whether the warnings "could function 'effectively' as *Miranda* requires." *Id.* at 611-12, 124 S. Ct. at 2610. In other words, does the warning "effectively advise the suspect that he had a real choice about giving an admissible statement at that juncture," does the warning effectively convey that the suspect "could choose to stop talking even if he had talked earlier." *Id.* If not, the plurality concluded, there existed no "practical justification" for concluding that *Miranda* was satisfied or for treating the second stage of the

5

interrogation as distinct from the first. *Id.* at 613, 124 S. Ct. at 2610.[1] In that case, a plurality of the court held that "a reasonable person" in the defendant's position "would not have understood [the warnings] to convey a message that she retained a choice about continuing to talk." *Id.* Justice Kennedy, who concurred in the result, proposed a narrower standard whereby a calculated two step interrogation would not yield admissible results unless curative measures, which could include the mere passage of time along with administration of *Miranda* warnings, were employed. *Id.* at 622, 124 S. Ct. at 2616 (Kennedy, J., concurring).

Because the *Siebert* decision is a plurality decision, the Texas Court of Criminal Appeals has applied the decision using the narrowest grounds of common agreement. *See Carter v. State*, 309 S.W.3d 31, 38 (Tex. Crim. App. 2010). Such an inquiry looks first to see if the officer "deliberately employed a two step 'question first, warn later' interrogation technique to circumvent [the] appellant's *Miranda* protections." *Id.* The question of whether the officer employed such a technique is a factual finding entitled to "highly deferential review." *Id.* at 40. If the officer does employ a deliberate two step interrogation strategy, the officer has the responsibility to apply curative measures. *See Martinez v. State*, 272 S.W.3d 615, 626-27 (Tex. Crim. App. 2008).

**Analysis**

Appellant argues that the ranger investigating this case used a two step interrogation technique to obtain a statement from him. Applying the factors from the plurality decision in *Siebert*, there are grounds on which to conclude that the two interrogations, one videotaped, the second a written statement, should be treated as one interrogation. *Siebert*, 542 U.S. at 615, 124 S. Ct. at 2612. The first round of interrogation was detailed. The content overlaps, the timing and setting are the same, there is a continuity of police personnel, and the State did not show that the interrogator's questions did not treat the second round as a continuation of the first.

But this is not a complete reading of what happened at the interrogation conducted in this

---

[1] The plurality decision offered five "relevant facts that bear on whether *Miranda* warnings delivered midstream could be effective." Those facts are

(1) the completeness and detail of the questions and answers in the first round of interrogation,
(2) the overlapping content of the two statements,
(3) the timing and setting of the first and the second rounds of interrogation,
(4) the continuity of police personnel, and
(5) the degree to which the interrogator's questions treated the second round as continuous with the first.

*Siebert*, 542 U.S. at 615, 124 S. Ct. at 2612.

case. At the outset of the interrogation, after Appellant had just begun to talk to him, the ranger interrupted Appellant and asked if he had been arraigned, asked if he had been told of the charges, and asked if he had been read his rights. Appellant said he had been before a judge, knew he had been charged with "homicide," and acknowledged that he had been read his rights. The ranger paused and then asked Appellant if he wanted to talk to him. Appellant did talk to him after that, for nearly thirty minutes. Following a short break, Appellant gave a handwritten statement. The form used for the handwritten statement listed Appellant's rights, and he initialed it to indicate that he understood his rights and waived them.

The underlying problem with a two step interrogation is that the first part of the interrogation is unwarned and, therefore, inadmissible. *See Seibert*, 542 U.S. at 608-09, 124 S. Ct. at 2608. An interrogation with that structure can result in the midstream application of *Miranda* warnings being ineffective. *See id.* at 617, 124 S. Ct. at 2613. That did not happen in this case. Here, the officer did not read Appellant his *Miranda* warnings at the outset of the interrogation, but he did reference the earlier warning that had been given to Appellant at his arraignment. The court of criminal appeals has held that a previous reading of rights can meet the requirements of *Miranda*. *See Ex parte Bagley*, 509 S.W.2d 332, 337 (Tex. Crim. App. 1974). In *Biddy v. Diamond*, 516 F.2d 118, 122 (5th Cir. 1975), twelve days passed between the initial *Miranda* warnings and the relevant statement. The officer asked the defendant if she remembered her rights, and she answered affirmatively. *Id.* So too, in this case, Appellant was read his rights at the magistrate's hearing April 3, 2009, and the ranger reminded him that he had been read his rights at the outset of the interrogation on April 6, 2009.

The trial court did not find a *Miranda* violation, and the record supports that conclusion. The ranger thought he had administered *Miranda* warnings at the outset of the interrogation, and he would not have addressed the warnings Appellant had already received if he wished to conduct a two step interrogation. The principal difference between the circumstances in this case and those in *Siebert* and *Martinez* is that the suspects in those cases had not been apprised of their rights before the first interrogation. *Siebert*, 542 U.S. at 608-09, 124 S. Ct. at 2608, *Martinez*, 272 S.W.3d at 622–23.

The record supports the trial court's conclusion that the ranger did not comply with article 38.22, Texas Code of Criminal Procedure, in the taking of the recorded oral statement. The statement is recorded, as required, but does not contain a recitation of Appellant's rights. *See*

7

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(2) (Vernon 2005). The written statement does comply with article 38.22 because it contains the required warnings on the face of the document.

The requirement imposed by article 38.22 that a recording of a custodial interrogation contain a warning of rights is a different kind of requirement from the one imposed by *Miranda*. A midstream *Miranda* warning can be ineffective when "a reasonable person" in the suspect's position "would not have understood [the warnings] to convey a message that [he] retained a choice about continuing to talk." *Siebert*, 542 U.S. at 617, 124 S. Ct. at 2613; *Carter* 309 S.W.3d at 36-37. There is no parallel requirement in the Texas law that the recording of the warnings be effective or convey anything to the suspect. In fact, article 38.22 does not require that the suspect know that the warning of his rights is being recorded.

Because the officer did not give Appellant his article 38.22 warnings on the same recording in which Appellant made a statement, the State could not comply with a procedural prerequisite for the admission of the recorded statement. *See Davidson v. State*, 25 S.W.3d 183, 186 n.4 (Tex. Crim. App. 2000). That procedural requirement was met for the written statement. Accordingly, we hold that the trial court did not err in allowing the second written statement. We overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's two issues, we *affirm* the judgment of the trial court.

                    **SAM GRIFFITH**
                         Justice

Opinion delivered January 12, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

8