02-09-118-CR












 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00118-CR

 

 


 
 
 Kerry Ray Bell
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 355th District Court OF Hood COUNTY

----------

MEMORANDUM
OPINION[1]

----------

         
A jury convicted Appellant Kerry Ray Bell of two counts of sexual assault and
one count of indecency with a child and assessed his punishment at eighteen
years’ confinement on each count.  The trial court sentenced him
accordingly.  Appellant brings eight issues challenging his competence to
stand trial, the admissibility of his videotaped statement, the absence of a
jury instruction regarding the statement, and the admissibility of the testimony
of Natalie Riggs and A.W. and arguing that the
cumulative total of errors constituted harmful error under the United States
Constitution and the Texas Constitution.  Because we hold that the trial
court did not err, we affirm the trial court’s judgment.

Background
Facts

         
The New Horizons home, also referred to as Redbird, in Granbury, Texas, is a
home for individuals with mental retardation.  Appellant lived at the home
with five other men, including A.W. 
Appellant is mentally retarded and suffers from bipolar disorder, ADD/ADHD, and
fetal alcohol syndrome.  A.W. is moderately to
severely mentally retarded.  In 2008, when A.W. was sixteen, he made an outcry to Riggs, one of the
caregivers at the home, about a sexual assault by Appellant.  Riggs notified
her boss, and the police were called.

         
A female forensic interviewer with the Children’s Advocacy Center in Granbury
attempted to interview A.W., but he was reluctant to
speak to her.  He agreed to speak instead to Robert Young, an investigator
for the Hood County District Attorney’s office.  After speaking with
Young, A.W. was taken to Cook Children’s Hospital in
Fort Worth for a sexual assault examination.  He told the female nurse
there that he had “told the police what happened” and answered, “I don’t know,”
to all other questions she asked.  The STD tests were negative, and there
was no physical evidence of an assault.

         
A staff member from Redbird took Appellant to the Hood County District
Attorney’s office for an interview with Young.  Young testified that no
law enforcement officer or agency had asked that this be done.  Young
interviewed Appellant without the staff member being present.  Young read
Appellant the Miranda[2]
warnings, and Appellant agreed to speak with him.  In the interview,
Appellant told Young about three different assaults of A.W.: 
one occasion of performing oral sex on A.W. and
touching A.W.’s penis with his hand and two different
instances of anally penetrating A.W.  This interview
was videotaped.

         
The trial court conducted a hearing on Appellant’s motion to suppress his
statement, at which Appellant’s attorney did not put on evidence.  The
State offered Appellant’s recorded statement and published the video for the court. 
Young testified that he did not threaten Appellant and that Appellant was free
to leave at any time.  The trial court found that Appellant’s statement
was freely and voluntarily given and denied his motion to suppress.

         
At trial, Riggs testified that Appellant was not on the same functioning level
as A.W. and that she did not believe that Appellant
should have been in the home because he functioned at a higher level than the
other residents.  A.W. also testified.
 Using a doll, A.W. identified the male genitals
of the doll as “privates” and the doll’s bottom as the “bo-bo.” 
A.W. testified that Appellant had touched A.W.’s “private” with his hand.  He denied that
Appellant had ever touched his “bo-bo.”  The
prosecutor asked A.W. if he was sure and if it was
hard to talk about, and he said, “Yes.”  When asked if he “wish[ed] that had never happened,” A.W.
nodded.  The prosecutor later asked if anyone had ever touched “[A.W.’s] bo-bo so that it hurt,”
and A.W. answered that Appellant had.  He testified
that Appellant had touched him with “[Appellant’s] private.”  A.W. insisted that Appellant never put his mouth on A.W.’s penis.

         
Appellant’s attorney introduced some of his mental health records, which
indicated that Appellant has an IQ of 66 and an overall age equivalent of eight
years and two months.  The attorney did not call any witnesses.  No
one filed a motion to determine Appellant’s competence.

         
Appellant timely appealed.

Competence
to Stand Trial

         
In his first and second issues, Appellant argues that the trial court violated
his federal right to due process and the mandatory provisions of Texas Code of
Criminal Procedure chapter 46B by failing sua sponte to conduct a hearing
on competence once evidence sufficient to raise a bona fide doubt as to his
competence to stand trial became evident.  Article 46B.003(b) of the code of
criminal procedure provides that “[a] defendant is presumed competent to stand
trial and shall be found competent to stand trial unless proved incompetent by
a preponderance of the evidence.”[3] 
Subsection (a) of the article provides that “[a] person is incompetent to stand
trial if [he] does not have . . .
sufficient present ability to consult with [his] lawyer with a reasonable
degree of rational understanding[] or [does not have] a rational as well as
factual understanding of the proceedings against [him].”[4]

         
Article 46B.004 of the code of criminal procedure
provides in relevant part,

(b) If evidence
suggesting the defendant may be incompetent to stand trial comes to the
attention of the court, the court on its own motion shall suggest that the
defendant may be incompetent to stand trial.

 

(c) On suggestion that
the defendant may be incompetent to stand trial, the court shall determine by
informal inquiry whether there is some evidence from any source that would
support a finding that the defendant may be incompetent to stand trial.[5]

 

As
the Texas Court of Criminal Appeals explained in Montoya v. State, bona
fide doubt triggers a trial court’s competence inquiry:

If a trial judge has a bona fide doubt about the
competency of the defendant, he or she shall conduct an informal inquiry to
determine if there is evidence that would support a finding of
incompetence.  A bona fide doubt may exist if the defendant
exhibits truly bizarre behavior or has a recent history of severe mental
illness or at least moderate mental retardation.[6]

         
Because the record raised concerns in this court regarding Appellant’s
competence to stand trial, we abated this appeal and remanded the cause to the trial court for an inquiry into Appellant’s
competence.  The conscientious trial judge ordered a psychological
examination of Appellant.  Dr. Barry Norman reviewed existing records;
conducted a clinical interview, mental status examination, and behaviorial observations; and verbally administered certain
competence-related questions.  He did not administer any standard testing
to determine intelligence level or adaptive level but did review existing
records.  Dr. Norman reported that, in his opinion, Appellant was
competent to stand trial at the time of trial and competent to stand trial at
the time of the assessment.

         
The trial court then conducted a hearing on Appellant’s competence and allowed
Appellant to present all evidence he desired regarding his competence. 
Appellant called trial counsel to testify.  Trial counsel had little
recollection of efforts to determine Appellant’s competence.  Trial
counsel testified that, in his opinion, Appellant had been competent to stand
trial, although trial counsel had objected that Appellant’s statement was
inadmissible because Appellant “had not voluntarily or actually intelligently
and knowingly waived his rights” because of his “mental deficiency.” 
Trial counsel testified that Appellant was able to converse with him and that
he believed that Appellant understood the charges against him.  In
response to questions from the court, trial counsel testified that Appellant
was able to communicate with him with a reasonable degree of rational
understanding and to aid in his defense and that Appellant had a factual as
well as a rational understanding of the charges against him.

         
Appellant’s trial counsel also testified that at trial he “was aware that
[Appellant] was mentally deficient[, but trial counsel
did not] know [at the competence hearing] that [he] was specifically aware
[during the trial] of . . . the diagnosis of [Appellant’s] mental
condition.”  Trial counsel also testified that he had read the report from
Pecan Valley and that one of his biggest arguments to the jury had been that
Appellant was mentally retarded.  Trial counsel also admitted that it
would be in his best interests regarding a claim of ineffective assistance of
counsel for Appellant to be found competent to stand trial.

         
The trial court has now conducted an inquiry into Appellant’s competence and
has found that Appellant was not incompetent at the time of trial. 
Although Appellant challenged the trial court’s prior failure to conduct the
inquiry into competence, he has not challenged the trial court’s determination
that he was competent.  We overrule Appellant’s first and second issues as
moot.

Admissibility
of Appellant’s Statement

         
In his third and fourth issues, Appellant argues that the trial court violated
his federal right to due process of law as well as article 38.22 of the code of
criminal procedure by denying his motion to suppress his videotaped statement
and by admitting the statement into evidence because the statement was
involuntary.

         
We review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.[7]  In
reviewing the trial court’s decision, we do not engage in our own factual
review.[8]  The trial judge is the sole trier of fact and judge of the credibility of the witnesses
and the weight to be given their testimony.[9] 
Therefore, we give almost total deference to the trial court’s rulings on
(1) questions of historical fact, even if the trial court’s determination
of those facts was not based on an evaluation of credibility and demeanor, and
(2) application-of-law-to-fact questions that turn on an evaluation of
credibility and demeanor.[10]  But
when application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court’s rulings on those
questions de novo.[11]

         
Stated another way, when reviewing the trial court’s ruling on a motion to
suppress, we must view the evidence in the light most favorable to the trial
court’s ruling.[12]  When
the trial court makes explicit fact findings, we determine whether the
evidence, when viewed in the light most favorable to the trial court’s ruling,
supports those fact findings.[13]  We
then review the trial court’s legal ruling de novo unless its explicit
fact findings that are supported by the record are also dispositive of the
legal ruling.[14]

         
The trial court found that

·        the police had given
Appellant “all of the advice, information and warnings required” by law before
questioning him or taking his statement and that the “advice, information and
warnings” complied with the law;

·        Appellant
intelligently and knowingly waived his rights in connection with his making of
the statement; and

·        Appellant voluntarily
made and signed the statement in compliance with the law.

As Appellant points out, claims of
involuntariness under article 38.22 do not require police overreaching but can
involve “sweeping inquiries into the state of mind of a criminal defendant.”[15]  Appellant also relies on Blackburn
v. Alabama[16]
generally, as well as other case law, in arguing that an accused person’s
deficient mental condition renders his confession involuntary under federal
law.  As this court pointed out in Franks v. State, the question to
be answered in cases in which a defendant may have a diminished mental capacity
is “whether the accused’s mental impairment is so
severe that he was incapable of understanding the meaning and effect of his
statement.”[17] 
Mental retardation does not automatically render a confession involuntary.[18]

         
Appellant argues here and argued below that because he was suffering from
mental retardation, he did not knowingly and intelligently waive his rights
when he made the recorded statement.  At the hearing on the motion to
suppress, Appellant relied exclusively on the trial court’s awareness that he
lived in a group home for those suffering with mental retardation, that he was
on multiple medications, and that he had been diagnosed with various
psychological ailments, including bipolar disorder.  He concedes that he
did not offer any evidence at the hearing on the motion to suppress.  The
State offered Young’s testimony.

         
Employees of the group home transported Appellant to the police department to
be interviewed by the police.  Upon entering the interrogation room,
Appellant faced the investigator, who wore a badge and a gun.  No
counselor or parent was present during the interrogation, but security guards
were present in the building.

         
Young read Appellant his Miranda warnings, and afterward, Appellant
agreed to talk to the police.  The record also reflects that Appellant was
not under arrest, but had no other place to go.  Appellant’s statement was
both recorded and reduced to writing.  There is no evidence that he was
forced or coerced to give the statement.

         
Appellant offered no controverting evidence. 
Appellant did not meet or refute the testimony regarding the voluntariness of
his statement.

         
There is no indication that Appellant did not understand the Miranda
warnings and no evidence that he was coerced, that his will was overborne by
the police, or that he did not understand his rights.  Based on the record
before us, we hold that the trial court did not err by denying Appellant’s
motion to suppress his statement.  The trial court therefore did not abuse
its discretion by admitting the statement.[19]  We overrule Appellant’s third and
fourth issues.

Jury
Instruction

         
In his fifth issue, Appellant argues that the trial court erred by failing to
submit the issue of voluntariness of Appellant’s statement to the jury. 
Appellant did not object to the jury charge on that ground.  When the
evidence raises an issue of the “voluntariness” of a defendant’s statement
under article 38.22, the trial court must give a general voluntariness
instruction under sections six and seven of that article because it is the “law
applicable to the case,” but when the defendant fails to request this
statutorily mandated instruction, the trial court’s failure to include it is reviewed
only for egregious harm under Almanza.[20]  Because there is no evidence that
Appellant’s statement was not freely and voluntarily made, the trial court did
not err by omitting the instruction.  We overrule Appellant’s fifth issue.

Testimony
of A.W.

         
In his sixth issue, Appellant argues that the trial court erred by admitting A.W.’s testimony because he was not competent to
testify.  Before A.W. testified, the trial court
held a hearing regarding his competence to testify.  The trial court
found, based on all the evidence it heard, that A.W.
was competent to testify at trial.  Appellant did not object to the
admission of A.W.’s testimony below. 
Consequently, Appellant has not preserved his complaint.[21]  In the interest of justice, we
also point out that based on our review of the hearing, there was no evidence
that A.W. was not competent to testify at trial, and
the trial court did not abuse its discretion by admitting his testimony. 
We overrule Appellant’s sixth issue.

Testimony
of Natalie Riggs

         
In his seventh issue, Appellant argues that the trial court erred by admitting
Riggs’s testimony because she was not qualified as an expert witness. 
Appellant complains that Riggs, a non-expert lay witness, was allowed to
testify as an expert and give an expert opinion that was beyond her training,
knowledge, and expertise.  Appellant made only one objection at trial
under rule 702.[22] 
Appellant did not object to subsequent testimony on the same subject. 
Consequently, Appellant did not properly preserve this issue for appellate
review.[23] 
In the interest of justice, we point out that Riggs’s testimony was admissible
because, as the State argues, she testified not as an expert but as a lay
witness regarding her opinions or inferences drawn from what she observed in
her experiences as a caregiver to both A.W. and
Appellant.[24] 
We therefore overrule Appellant’s seventh issue.

Cumulative
Error

         
Having overruled Appellant’s first seven issues, we overrule his eighth issue,
alleging cumulative error, as moot.

Conclusion

         
Having
overruled Appellant’s eight issues, we affirm the trial court’s judgment.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
DAUPHINOT, MCCOY, and MEIER, JJ.

 

MCCOY,
J. concurs without opinion.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  June 2,
2011














[1]See
Tex. R. App. P. 47.4.





[2]Miranda
v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).





[3]Tex. Code Crim. Proc. Ann. art. 46B.003(b) (West 2006).





[4]Id. art. 46B.003(a).





[5]Id. art. 46B.004(b), (c).





[6]291 S.W.3d 420, 425 (Tex. Crim. App.
2009).





[7]Amador v. State, 221 S.W.3d 666,
673 (Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997).





[8]Romero v. State, 800 S.W.2d 539,
543 (Tex. Crim. App. 1990); Best v. State, 118 S.W.3d
857, 861 (Tex. App.—Fort Worth 2003, no pet.).





[9]Wiede
v. State, 214 S.W.3d 17, 24–25 (Tex. Crim. App.
2007); State v. Ross, 32 S.W.3d 853, 855 (Tex.
Crim. App. 2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).





[10]Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108–09 (Tex. Crim. App.
2006); Johnson v. State, 68 S.W.3d 644, 652–53
(Tex. Crim. App. 2002).





[11]Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App.
2005); Johnson, 68 S.W.3d at 652–53.





[12]Wiede,
214 S.W.3d at 24; State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).





[13]Kelly,
204 S.W.3d at 818–19.





[14]Id. at 818.





[15]Oursbourn
v. State, 259 S.W.3d 159, 172 (Tex. Crim. App.
2008).





[16]361 U.S. 199, 80 S. Ct. 274 (1960).





[17]90 S.W.3d 771, 785 (Tex. App.—Fort Worth
2002, no pet.).





[18]Penry v. State, 903 S.W.2d
715, 746 (Tex. Crim. App.), cert. denied, 516 U.S. 977 (1995).





[19]See
Shuffield v. State, 189 S.W.3d
782, 793 (Tex. Crim. App.), cert. denied, 549 U.S. 1056 (2006).





[20]
Almanza v. State, 686 S.W.2d 157, 171–72 (Tex. Crim. App. 1985) (op. on reh’g); see also Tex. Code Crim. Proc. Ann. art. 36.19 (West
2006); Oursbourn, 259 S.W.3d
at 165, 174–82.





[21]See
Tex. R. App. P. 33.1(a)(1), (2); Mendez v. State,
138 S.W.3d 334, 341 (Tex. Crim. App. 2004); Mosley
v. State, 983 S.W.2d 249, 265 (Tex. Crim. App.
1998) (op. on reh’g), cert. denied, 526
U.S. 1070 (1999).





[22]See
Tex. R. Evid. 702 (providing
expert witness rule).





[23]See
Martinez v. State, 98 S.W.3d 189, 193 (Tex. Crim.
App. 2003) (citing Ethington v. State,
819 S.W.2d 854, 858 (Tex. Crim. App. 1991)); Fuentes
v. State, 991 S.W.2d 267, 273 (Tex. Crim. App.), cert.
denied, 528 U.S. 1026 (1999); see also Leday
v. State, 983 S.W.2d 713, 718 (Tex. Crim. App.
1998) (holding erroneous admission of evidence will not require reversal when
other such evidence was received without objection).





[24]See
Martinez v. State, 22 S.W.3d
504, 507 (Tex. Crim. App. 2000).