**Affirmed; Opinion Filed; October 3, 2019**



In the

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-18-00870-CR
No. 05-18-00871-CR
No. 05-18-00872-CR

**THE STATE OF TEXAS, Appellant**

**V.**

**KEVIN CASTANEDANIETO, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause Nos. F17-57212-X, F17-57213-X & F18-00407-X**

## OPINION

Before Justices Bridges, Partida-Kipness, and Carlyle
Opinion by Justice Carlyle

On the court's own motion, we withdraw our October 2, 2019 memorandum opinion and vacate the judgment of that date. The following is now the court's opinion.

The State appeals the trial court's order suppressing appellee Kevin Castanedanieto's statement. For the reasons that follow, we affirm.[1]

**The law**

We review a trial court's ruling on a motion to suppress for an abuse of discretion and apply a bifurcated standard of review. *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016);

---

[1] Though the State's sole issue on appeal is multifarious, we consider it and the differing legal bases the State offers in support. *See* TEX. R. APP. P. 38.9; *cf.* TEX. R. APP. P. 38.1(f), (i).

*State v. Aguilar*, 535 S.W.3d 600, 604 (Tex. App.—San Antonio 2017, no pet.). We view the evidence in the light most favorable to the trial court's ruling, giving almost complete deference to the court's determination of historical facts that the record supports, especially those based on credibility or demeanor assessments.[2] *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). We review with this deference even in cases involving video evidence. *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006). That is because our system does not require parties to "concentrate their energies and resources on persuading the trial judge" only to start over on appeal, treating the trial proceedings as a "tryout," and requiring parties to "persuade three more judges at the appellate level." *Id.* (citing and quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574–75 (1985)).[3]

We afford that same deference regarding the trial court's "application of law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor." *Crain*, 315 S.W.3d at 48. For a mixed question of law and fact that does not depend on credibility or demeanor evaluation, we "may conduct" de novo review. *Id.* "The winning side is afforded the 'strongest legitimate view of the evidence' as well

---

[2] We note that, because the court granted suppression, it was not required to issue findings of fact and conclusions of law and we need not remand for the court to take that action. *See* TEX. CODE CRIM. PROC. art. 38.22, § 6 ("In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding . . . as to whether the statement was made under voluntary conditions."); *see also State v. Perez*, No. 14-16-00690-CR, 2017 WL 5505855, at *9 (Tex. App.—Houston [14th Dist.] Nov. 16, 2017, no pet.) (mem. op., not designated for publication) (concluding article 38.22 requires trial court to file findings and conclusions "*only if* it decides that the statement is voluntarily made" (emphasis added)).

[3] *Montanez* groups *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000), as part of a line of cases rendering our law "somewhat unclear as to which standard of review" applies to video evidence in motion to suppress cases. *Montanez*, 195 S.W.3d at 108. The court of criminal appeals then clarified as cited above. *Id.* at 109.

 The CCA has since cited *Carmouche* for part of the proposition that the dissent asserts, that we cannot ignore indisputable video evidence. *State v. Duran*, 396 S.W.3d 563, 570 n.20 (Tex. Crim. App. 2013). But the CCA has also stated that deference to the trial court is appropriate when video evidence did "not indisputably refute the trial court's finding." *State v. Gobert*, 275 S.W.3d 888, 892 n.13 (Tex. Crim. App. 2009). In line with the CCA, we believe *Duran* and *Gobert* can coexist and that the *Gobert* explanation of *Montanez* most closely tracks the situation in this case, requiring us not to "second-guess the trial court's determination of the facts." *See Duran*, 396 S.W.3d at 571 n.21; *see also State v. Hummel*, No. 05-11-00833-CR, 2012 WL 3553383, at *3 (Tex. App.—Dallas Aug. 17, 2012, pet. ref'd) (not designated for publication) (affirming trial court's grant of motion to suppress when video showed traffic stop that was basis of arrest).

as all reasonable inferences that can be derived from it." *Duran*, 396 S.W.3d at 571 & n.23 (citing *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011); *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011)).

We review the trial court's legal ruling de novo unless the implied factual findings supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2008). "[T]he party with the burden of proof assumes the risk of nonpersuasion. If this party loses in the trial court and the trial court makes no explicit fact findings, then this party should usually lose on appeal." *Id*. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling.[4] *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

**The facts**

Castanedanieto was eighteen years old, an immigrant from El Salvador some five years prior, and did not graduate high school. He made two custodial post-arrest statements. He made the first to Detective Thayer shortly after arrest, around 3:00 a.m., and made the second to Detective Garcia the next day, around dinner time. The record includes video recordings of both statements. The State sought to admit only the second statement.

Detective Thayer began the first interrogation by saying, "I'm working on this case . . . kind of a mess, huh? Kind of a mess. *We'll talk about it here in a minute*." Shortly thereafter, Detective Thayer was authoritative, using gestures as he spoke: he told Castanedanieto, "take your arms out

---

[4] When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary factual findings that support the trial court's ruling if the evidence, viewed in the light most favorable to the ruling, supports those implied findings. *See Garcia-Cantu*, 253 S.W.3d at 241 (citing *Kelly*, 204 S.W.3d at 819). The dissent seeks to apply its interpretation of the evidence below instead of implying the necessary findings to support the trial court's ruling.

of your shirt . . . it's a respect thing though, right, *cause we're gonna have a conversation* and *we're gonna be truthful with each other*."

During the first four minutes of the video, Detective Thayer asked Castanedanieto several background questions. Thayer then read Castanedanieto his *Miranda* rights in English. When he asked Castanedanieto if he understood the rights he read to him, Castanedanieto tilted his hand back and forth. The detective asked, "A little bit?" to which Castanedanieto nodded his head and explained that he did not speak a lot of English. When Castanedanieto indicated that he could read Spanish, Detective Thayer had him read the *Miranda* card in Spanish.[5]

After Castanedanieto read the card out loud and was asked if he understood, Castanedanieto, looking down at the table, moved his head slightly. The detective then asked Castanedanieto if he was willing to talk to him, at which point he looked up at Detective Thayer and uttered "um." As Castanedanieto looked back down at the table, Detective Thayer continued, saying, "to try to figure this all out." Castanedanieto then looked up at the detective while tapping and rubbing his cheek with his hand and said, "It's 'cause—um—I don't understand." Detective Thayer then declared, "Ok, let's talk about what happened tonight," to which Castanedanieto responded, "Yes, sir." Castanedanieto answered Detective Thayer's questions for the next twenty-two minutes.

The next day Detective Garcia took his turn interrogating Castanedanieto. Garcia testified he was investigating crimes similar to those for which Castanedanieto and his cohort were arrested. Detective Garcia went to the jail and asked Castanedanieto if he would come to police headquarters for an interview. Castanedanieto agreed. Detective Garcia got him food from McDonald's and

---

[5] The dissent seems to divine meaning from the circumstances that Castanedanieto seemed to understand English well enough before the *Miranda* warnings, that he spoke in English, and that his lawyer did not require an interpreter at the suppression hearing. In doing so, the dissent steps outside the proper standard of review and works to reweigh and recategorize the evidence before the trial court piece by piece. If that were our function here, we may well agree with the dissent. But in this case, we must defer to the trial court's factual conclusions to the extent they implicate these circumstances, even if implied.

brought him back to the interrogation room, where he was allowed to eat before the detective conducted the interrogation. They spoke in English. It is not clear what Detective Garcia knew of Castandanieto's prior interrogation, though he certainly knew it had occurred and that Castanedanieto had confessed to certain things.

As the video played at the hearing, Garcia explained to the trial court that during the initial questioning while he was trying to get to know Castanedanieto, he had no concerns about Castanedanieto's understanding of what he was saying and that Castanedanieto responded properly to his questions. The video depicts Garcia asking Castanedanieto about the police in El Salvador. Castanedanieto responded they are "not good." Garcia then declared, "Basically, we're gonna go over everything that you talked about with the other detective and now that you've had a couple of days to think about stuff, maybe you might remember something that you didn't, or you might have some questions of your own for me that I'll try to answer."

After Garcia finished reading Castanedanieto his *Miranda* rights and asked him if he understood the rights he read to him, Castanedanieto responded "Yes" and nodded his head. Detective Garcia also testified he did not promise Castanedanieto anything in exchange for the statement, nor did he threaten or coerce him into giving him a statement. That said, Garcia bought Castanedanieto McDonald's for dinner, which was not insignificant to the eighteen-year-old. Castanedanieto ate the food and commented that he hoped it would not prove to be his last hamburger for awhile. Garcia attempted to downplay Castanedanieto's concern and continued with his interrogation.

After watching the two interrogation videos, and after hearing Garcia testify regarding his interaction with Castanedanieto, the trial court suppressed the second video interrogation.

**Application of law to facts**

The State asserts in its issue that the trial court erred in suppressing Castanedanieto's second statement because that statement "was given knowingly, intelligently, and voluntarily," and Castanedanieto's "Fifth and Sixth Amendment rights to counsel were not violated." Based on our abuse-of-discretion review, we conclude the trial court's ruling is supported by the record.

The trial court could have based its suppression in part on the continued behavior of law enforcement figures declaring to Castanedanieto that he would speak to them in the interrogation setting. The evidence supports an inference that Detective Thayer's declarative statements set the tone for an expectation that Castanedanieto would speak to authorities that overbore Castanedanieto's will and made his statements involuntary. Thayer told Castanedanieto twice that he would be talking to the detective and then, despite going through the motion of providing *Miranda* warnings in English and Spanish, despite Castanedanieto expressing hesitation by acts and words, failed to elicit any verbal or non-verbal assent to waiving those rights. Instead, he said, "Ok, let's talk about what happened tonight." Castanedanieto responded "Yes, sir" and went on to tell on himself extensively. The very next day, Detective Garcia came calling and, though to a lesser extent than Thayer, he too *declared* to Castanedanieto that he would talk. Further, Detective Garcia reminded Castanedanieto of his interrogation and confession the day before, suggesting he may have more to tell the second time around. This reference to the former confession gave the trial court sufficient basis to have concluded that Castanedanieto's second confession was motivated, if only in part, by so-called cat-out-of-the-bag thinking.[6]

---

[6] In *United States v. Bayer*, 331 U.S. 532, 540–41 (1947), Justice Jackson wrote,

> [A]fter an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession may always be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed.

The court of criminal appeals has set forth a list of factors and guiding principles to govern courts' analysis of the situation we have here, when a criminal defendant complains a latter confession was tainted by a prior one. *See Sterling v. State*, 800 S.W.2d 513, 519–20 (Tex. Crim. App. 1990) (factors to be considered when determining whether a former confession's illegality tainted a later one are: (1) whether the condition rendering the first confession inadmissible persisted through later questioning; (2) the length of the break in time between the two confessions; (3) whether the defendant was given renewed *Miranda* warnings; (4) whether the defendant initiated the interrogation which resulted in the later confession; and (5) "any other relevant circumstances," including whether a magistrate warned defendant of his rights between confessions, whether the defendant's latter confession was motivated by earlier improper influences brought to bear on him, whether the defendant remained in custody between the confessions, whether the defendant conferred with counsel between confessions or requested counsel, and whether the defendant gave the second confession when he otherwise might not have because he had already given the first one).[7]

From an analytical standpoint, *Sterling* involved the opposite (and much more common) procedural situation from this case—a criminal defendant's appeal from the denial of his motion to suppress. The CCA held the trial court's denial of suppression of Sterling's first confession to be error that, upon further analysis, was harmless in light of the proper admission of his subsequent confession. *Id.* at 518. The first detective in that case unquestionably misled Sterling in a way clearly prohibited by law. *Id.* at 515, 518. The second detective in *Sterling* did not compound the

---

We refer to this line of cases as a potential basis for the trial court's action, as we must in our role as an appellate court. It is not to be read as some broadening of the cat-out-of-the-bag theory, which is distinctly cabined as a basis in Texas law for either (1) suppression in the trial court or (2) reversing the denial of suppression.

[7] The CCA borrowed this framework from the Seventh Circuit, which formulated it in response to a criminal appellant's complaint that, "had he known that his first confession would be suppressed he would not have made the later incriminating statements, but having once let 'the cat out of the bag' remaining silent during the later interrogation appeared to be an exercise in futility." *Holleman v. Duckworth*, 700 F.2d 391, 396 (7th Cir. 1983).

error the first detective made by making similar promises to Sterling. Also, he came from a different law enforcement agency, did not question Sterling about the prior confession, nor "did he use this confession to elicit the latter confession from appellant." The second detective said he knew nothing about the earlier improper statements to Sterling. And, finally, Sterling never invoked his *Miranda* rights, clearly waiving them each time he was warned. *Id.* at 515, 520.

Here, the trial court *granted* the motion to suppress. We could easily write the opinion affirming the trial court's action had it *denied* Castanedanieto's motion to suppress. But we just as easily affirm the grant of the motion to suppress because of the wide discretion a trial court has in making this decision. We stress that the video is not the only piece of evidence the trial court evaluated here. Detective Garcia testified at the hearing, providing testimony regarding his visit to Castanedanieto at the county jail, his invitation back to police headquarters, his offer to buy Castanedanieto dinner, and the substance of their conversation during those events. Garcia discussed their lack of speaking any Spanish to one another, as well as his perception that Castanedanieto knew and understood English.[8] The trial court had full discretion to assess Garcia's credibility and to view his demeanor. And, nothing in either video goes so far as to become "indisputable video evidence" of Castanedanieto's voluntariness to speak, given what we infer the

---

[8] Garcia testified, and the dissent notes, that Castanedanieto used the slang word, "strap" in place of "gun" as some indication he was ingrained into the culture of the United States. In the procedural posture of reviewing the grant of suppression, though we consider the use of English, we believe it is not dispositive of the State's claim that the trial court abused its discretion. *See also* note 5 *supra*. There is a legitimate view of the evidence supporting affirmance, expressed by Castanedanieto's relatively recent immigration, his education level, and his lawyer's explanation that this was a comprehension issue, which was borne out by Castanedanieto's on-the-spot statement in the first interview: "it's 'cause—um—I don't understand." Separately, the trial court would not have abused its discretion to minimize the importance of Castanedanieto using slang and conclude that the young man perhaps latched on to slang as a way of inculcating himself into a new culture.

If, in five years after moving to a foreign country whose primary language was not one's mother tongue, a young man finds himself in police custody in that foreign country, we cannot say it would be unreasonable to conclude one did not feel he fully comprehended a legal warning like the *Miranda* warning. The facts of this case at least allow, though they may not demand, a conclusion that this is what courts refer to when they speak of the "compulsion inherent in custodial surroundings." *See Miranda v. Arizona*, 384 U.S. 436, 458 (1966). Nothing in this record indisputably overcomes a conclusion that Castanedanieto felt this inherent compulsion and attempted, but was thwarted in his attempt, to remain silent.

trial court concluded about the first confession and what it could have inferred about Garcia and the second confession. Nothing in the second video indisputably demonstrates Castanedanieto was not under the influence of the detectives' declarations that he *would* speak to them or that he was not motivated at least in part by cat-out-of-the-bag thinking.[9]

We note that in *Oregon v. Elstad*, the Supreme Court walked back its recognition of the cat-out-of-the-bag theory as a basis for excluding confessions. *See* 470 U.S. 298, 314 (1985). The Court in *Elstad* said "the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion." *Id*. And, administering *Miranda* warnings to a "suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." *Id*. In those circumstances, the "finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights." *Id*.

But *Elstad*'s "may reasonably" language does not require appellate courts reviewing a grant of suppression to reverse if the court can reweigh the facts in a way that may warrant a conclusion that denying the motion was possible.[10] Our function in this case is to review the trial court's actions for an abuse of discretion. We must examine the video evidence to determine if it renders certain facts or circumstances indisputable, but are not to act as if the trial court

---

[9] Again, we need not approve the trial court's conclusion as the one we necessarily would have made, but cite this path of legal analysis as a potential basis for suppressing the confession that was not an abuse of discretion. *See Stevens*, 235 S.W.3d at 740 (courts of appeals may affirm for any applicable legal theory if trial court's decision is supported by the record); *see also* note 6 *supra*. The dissent reweighs each *Sterling* factor, suggesting a different answer to the analysis. That is not our job here.

[10] We note that case law suggesting limited application of a sound theory of human behavior does not render it forever impotent. We suggest the cat-out-of-the-bag theory here only as one potential alternate basis a trial court could have relied on in this situation where we affirm its order. Thus, in this case, we conclude the trial court did not abuse its discretion by suppressing the second confession and that cat-out-of-the-bag thinking was an acceptable part of the reason for that conclusion.

proceedings were just a tryout. *See Montanez*, 195 S.W.3d at 109 (citing and quoting *Anderson*, 470 U.S. at 574–75).[11]

On this record, we conclude the trial court did not abuse its discretion by granting Castanedanieto's motion to suppress his second statement. We affirm the trial court's order.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

Bridges, J., dissenting

Publish
TEX. R. APP. P. 47.2(b)
180870F.P05

---

[11] *See McPherson v. Rudman*, No. 05-16-00719-CV, 2019 WL 3315453, at *3 (Tex. App.—Dallas July 24, 2019, order) (Schenck, J., concurring on denial of en banc reconsideration) ("[W]e cannot function like an instant replay booth." (citing *Michigan v. Lucas*, 500 U.S. 145, 155 (1991) (Stevens, J., dissenting) ("We sit, not as an editorial board of review, but rather as an appellate court. Our task is limited to reviewing 'judgments, not opinions.'"))).



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-18-00870-CR          V.

KEVIN CASTANEDANIETO, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas
Trial Court Cause No. F17-57212-X.
Opinion delivered by Justice Carlyle, Justices Bridges and Partida-Kipness participating.

Based on the Court's opinion of this date, the trial court's order is **AFFIRMED**.

Judgment entered this 3rd day of October, 2019.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-18-00871-CR     V.

KEVIN CASTANEDANIETO, Appellee

On Appeal from the Criminal District Court
No. 6, Dallas County, Texas
Trial Court Cause No. F17-57213-X.
Opinion delivered by Justice Carlyle,
Justices Bridges and Partida-Kipness
participating.

Based on the Court's opinion of this date, the trial court's order is **AFFIRMED**.


Judgment entered this 3rd day of October, 2019.



# Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-18-00872-CR     V.

KEVIN CASTANEDANIETO, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas
Trial Court Cause No. F18-00407-X.
Opinion delivered by Justice Carlyle, Justices Bridges and Partida-Kipness participating.

Based on the Court's opinion of this date, the trial court's order is **AFFIRMED**.

Judgment entered this 3rd day of October, 2019.